[No. 82358-8.   En Banc.]

Argued January 14, 2010.     Decided July 22, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. JOSHUA FRANK LEE HARVILL, *Petitioner*.

*Valerie Marushige*, for petitioner.

*Susan I. Baur, Prosecuting Attorney*, and *Michelle L. Shaffer* and *Sean M. Brittain, Deputies*, for respondent.

¶1 STEPHENS, J. — Joshua Frank Lee Harvill challenges his conviction for unlawful delivery of cocaine, arguing that he produced sufficient evidence at trial to entitle him to a jury instruction on the defense of duress. The trial court refused to give the duress instruction on the ground that evidence of an explicit threat was necessary, whereas Harvill's evidence showed only an implicit threat. Because this was an error of law and was not harmless, we reverse the court below and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2 Joshua Frank Lee Harvill sold cocaine to Michael Nolte in a controlled buy organized by the Cowlitz County Sheriff's Office. *State v. Harvill*, noted at 146 Wn. App. 1037, 2008 WL 3846102, at *1, 2008 Wash. App. LEXIS 2056, at *1 . Harvill was arrested after the transaction and charged with unlawful delivery of cocaine. At trial, Harvill admitted his participation in the transaction and relied solely on the defenses of duress and entrapment. Specifically, Harvill claimed that he sold cocaine to Nolte because he feared that, if he did not, Nolte would hurt him or his family.

¶3 Harvill testified that he received 9 or 10 calls from Nolte in the days leading up to the controlled buy in which Nolte insisted that Harvill get Nolte some cocaine. 2008 WL 3846102, at *3, 2008 Wash. App. LEXIS 2056, at *6. Nolte

would say, "You gotta get me something," or "You better get me some cocaine," and his tone was aggressive. Verbatim Report of Proceedings (VRP) (Jan. 4, 2007) at 6, 37, 39. But, Harvill could not recall Nolte ever saying "or else" or words to similar effect. *Id.* at 38. Harvill received four more calls on the day of the transaction, the last two while he was at Chuck E. Cheese's restaurant with his family. *Id.* at 7. Harvill claimed that he was afraid that Nolte would immediately come to Chuck E. Cheese's and drag him or one of his family members outside and hurt one of them if Harvill refused to get Nolte some cocaine. *Id.* at 8, 13, 19-20, 28. He denied that he sold cocaine otherwise. *Id.* at 6, 12.[1]

¶4 Harvill and Nolte had known each other for several years. *Id.* at 4. Nolte was 5 feet 10 inches tall and weighed 200 pounds. VRP (Jan. 3, 2007) at 111. Harvill was 5 feet 5 inches tall and weighed about 140 pounds. VRP (Jan. 4, 2007) at 20. Harvill was afraid of Nolte, he testified, because he saw Nolte daily at work, where Nolte would brag about how he had once smashed another man's head with a beer bottle, causing brain damage. *Id.* at 4-6. Harvill also knew that Nolte had previously grabbed a gun from another man and then stabbed him. *Id.* at 19-20. Nolte and Harvill's brother had wrestled once and Nolte nearly broke Harvill's brother's arm. *Id.* at 4-5. Harvill asserted that Nolte used steroids and that he feared what Nolte was capable of. *Id.* at 6, 8.[2]

¶5 Harvill requested a jury instruction on duress so that he could argue the defense during closing argument. *See id.* at 55-56. The trial court denied the instruction on the ground that Nolte never voiced any actual threat to Harvill.

---

[1] There was contradictory testimony about Nolte's interactions with Harvill. For purposes of this case, we accept Harvill's account as true: the question is whether Harvill introduced evidence that, *if believed by the jury*, would support a duress defense.

[2] Nolte also testified regarding these incidents. He was convicted of assault for the beer-bottle incident. VRP (Jan. 3, 2007) at 111. The gun/stabbing incident was determined to involve self-defense and all charges related to it were dropped. VRP (Jan. 4, 2007) at 47-49. The wrestling incident occurred when Nolte was 16; no charges appear to have been associated with it. VRP (Jan. 3, 2007) at 103.

*Id.* at 57-58. Rather, Harvill's fear of Nolte stemmed from his knowledge about Nolte's behavior, which the trial court held was insufficient to establish duress as a matter of law. *Id.* at 58-60. Harvill objected, arguing that he had perceived Nolte's requests for drugs as a threat: if he refused to get Nolte drugs, Nolte would come to Chuck E. Cheese's and hurt him or his family. *Id.* at 66-68. This was enough, Harvill claimed, to present the issue of duress to the jury. *Id.* The trial court adhered to its initial holding rejecting the duress instruction. However, the court allowed Harvill to present closing argument connecting the evidence of Harvill's fear of Nolte to his entrapment defense. *Id.* at 68-69. Harvill did so. *Id.* at 111-19.

¶6 The jury convicted Harvill, and he appealed. *Harvill*, 2008 WL 3846102, at \*3, 2008 Wash. App. LEXIS 2056, at \*9. The Court of Appeals assumed, without deciding, that the trial court erred by refusing the duress instruction but concluded that any error was harmless. 2008 WL 3846102, at \*4, 2008 Wash. App. LEXIS 2056, at\*10. The Court of Appeals reasoned that, in rejecting Harvill's argument that Nolte induced him to participate in the crime (entrapment), the jury necessarily rejected the argument that Nolte compelled Harvill to participate by threat or use of force (duress). 2008 WL 3846102, at \*4-5, 2008 Wash. App. LEXIS 2056, at \*9-10. We granted review at 166 Wn.2d 1009 (2009).

## ANALYSIS

¶7 Duress is an affirmative defense that must be established by a preponderance of the evidence. *State v. Frost*, 160 Wn.2d 765, 773, 161 P.3d 361 (2007). The defendant must prove that

(a) he participated in the crime under compulsion by another who by threat or use of force created an apprehension in his mind that in case of refusal he or another would be liable to immediate death or immediate grievous bodily injury; and (b) such apprehension was reasonable upon his part; and (c) he would not have participated in the crime except for the duress involved.

*See* RCW 9A.16.060(1). A defendant "is entitled to have the jury instructed on [his] theory of the case if there is evidence to support that theory. Failure to so instruct is reversible error." *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997) (citation omitted).

¶8 The query here is whether the evidence at trial was sufficient to support Harvill's duress defense. We review for abuse of discretion. *See State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002) (requiring abuse of discretion review if the trial court refuses an instruction for lack of evidentiary support). A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

¶9 The trial court denied Harvill's request for a duress instruction on the ground that there was no actual "threat." *See* RCW 9A.16.060(1)(a) (allowing a duress defense only if the defendant "participated in the crime under compulsion by another who *by threat* or use of force created an apprehension . . . ." (emphasis added)). In this context, "threat" means "to communicate, directly or indirectly the intent . . . [t]o cause bodily injury in the future to the person threatened or to any other person." RCW 9A.04.110(27)(a). According to the trial court, Nolte never communicated any intent to do Harvill harm, and Harvill's fear, based on general knowledge about Nolte's past behavior, did not constitute a "threat" under the duress statute. Harvill counters that he perceived Nolte's requests for drugs as threats—that is, as indirect communications of Nolte's intent to harm Harvill if he did not supply Nolte with drugs—and that his *perception* of a threat, if reasonable, was enough to allow him to argue the duress defense.

¶10 The question comes down to whether the duress statute requires an explicit threat or whether an implicit threat that arises from the circumstances will suffice. At trial and again on appeal, the State emphasized that Nolte never told Harvill to get him drugs "or else," arguing that the absence of this phrase or similar words

confirms that no express or implied threat occurred. VRP (Jan. 4, 2007) at 38; Br. of Resp't at 8-9. But, the lack of an "or else" proves only that there was no *direct* threat. The statutory definition of "threat" sweeps more broadly. *See* RCW 9A.04.110(27)(a) (defining "threat" as "to communicate, directly *or indirectly* the intent . . . [t]o cause bodily injury" (emphasis added)). Determining what counts as an *indirect* communication of intent to cause physical harm depends on the totality of the circumstances.

¶11 *Williams* illustrates this point. Williams was charged with welfare fraud when she failed to report her abusive, live-in boyfriend's income to the Department of Social and Health Services (DSHS). 132 Wn.2d at 250-51. She argued that her boyfriend had ordered her not to disclose his income to DSHS, and she feared he would severely hurt her or her children if she disobeyed him. *Id.* at 251, 253. The trial court rejected her request for a duress instruction because, as her boyfriend frequently left town for his work, the threat of harm to Williams was not "immediate" under the statute. *Id.* at 259. We reversed, holding that "the duress statute does not require that it actually be possible for the harm to be immediate. Rather, it directs the inquiry at the defendant's *belief* and whether such belief is reasonable." *Id.* Because Williams testified that she believed the threat was of immediate harm and had expert testimony suggesting that such a belief was reasonable, the immediacy of the harm was a jury question. *Id.* at 253, 259.

¶12 There was no discussion in *Williams* of whether Williams's boyfriend ever explicitly threatened to hurt her or the children if she reported his income, but the opinion suggests that an explicit threat was not required. We held that Williams should be able to present testimony that, based on her interactions with and knowledge about her boyfriend, she reasonably perceived his words and actions as an implicit threat. Moreover, were an explicit threat necessary to support a duress defense, Williams's expert testimony about her perception of harm if she disobeyed her

boyfriend would have been irrelevant: the evidence would have revealed on its face whether Williams's boyfriend had physically or verbally threatened her. The reasoning in *Williams* therefore suggests that proof of duress can be based on a perception of harm in light of a history between the actors.[3]

¶13  The history of the duress statute supports this view. Washington codified the common law duress defense as part of a comprehensive criminal code passed in 1909. *See* LAWS OF 1909, ch. 249, § 4 (defining "duress" as when one defendant participates in the crime "under compulsion by another engaged therein, who by threats creates a reasonable apprehension in [his] mind . . . that in case of refusal he is liable to instant death or grievous bodily harm"); *State v. Mannering*, 150 Wn.2d 277, 281, 75 P.3d 961 (2003) ("The duress defense derives from the common law . . . ."). The 1909 code did not define "threat," so its ordinary meaning applied. *See Burton v. Lehman*, 153 Wn.2d 416, 422-23, 103 P.3d 1230 (2005). The ordinary meaning of the term "threat" in 1909 was broad enough to include implied threats arising from the circumstances. *See State v. Miller*, 61 Wash. 125, 127, 111 P. 1053 (1910). In *Miller*, the defendant's confession was involuntary because he was subjected to solitary confinement in a hole and to other abuses. *Id.* at 127-30. In addition, the prosecutor implicitly threatened to bring additional charges against the defendant if he did not confess. This court observed, "The [prosecutor's] evident purpose was to obtain a confession from this appellant, and we think, under his own admission, that the threat which he made, *or the implied threat, as he terms it*, was sufficient to

---

[3] Harvill also cites *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994). Riker obtained a duress instruction despite being "unable to testify to any explicit threats" directed against her by the police informant. *Id.* at 356-58. *Riker* is of limited usefulness, however, because the prosecutor in that case did not object to the instruction. *Id.* at 358. The real contest was over whether Riker's expert could opine that Riker perceived immediate harm because she was a battered woman, *id.* at 358-66, not whether Riker was entitled to the duress defense in the first instance. Nonetheless, Riker claimed that she perceived the informant's vague comments as a threat, and neither the prosecutor nor this court saw fit to reject the notion that such an implicit threat is sufficient to obtain a duress instruction. *Id.* at 356-58.

render the confession made a confession obtained by duress." *Id.* at 127 (emphasis added). From this description, it is clear that the ordinary definition of "threat" in 1909 encompassed implicit threats arising from the circumstances. This understanding informed the 1909 duress statute that used the term "threat." It is therefore no surprise that later codifications of the statute defined "threat" in terms of both direct and indirect communications. *See* RCW 9A.04.110(27). By including "indirect" in the definition of threat, the legislature preserved the duress statute's recognition of both explicit and implicit threats.

¶14 Properly defining "threat" to include both explicit and implicit threats serves the purpose of the duress statute. The statute is concerned with the "lesser of two evils." *Mannering*, 150 Wn.2d at 285. Faced with danger to his or another's safety, the defendant is excused for choosing the lesser evil of perpetrating a crime, unless the crime involves killing an innocent person, which is never the lesser of two evils. *See id.* at 282, 285 (describing how duress was not a defense to a murder charge at common law). The defendant forfeits his excuse if by his own fault he necessitates his Hobson's choice. *See* RCW 9A.16.060(3). This purpose applies with equal force to direct threats, arising from overtly threatening words or physical intimidation, and to indirect threats, arising from other conduct and circumstances. So long as the defendant's perception of the implicit threat is reasonable under the circumstances, he is put to the choice between two evils through no fault of his own and should be allowed to argue the defense.

¶15 The cases relied on by the trial court and the State do not support a contrary view. The trial court relied on *State v. Harris*, 57 Wn.2d 383, 357 P.2d 719 (1960), in which we rejected a duress defense because the defendant had not been threatened.

> [D]uress is a defense only where it is shown that the threats of one person have created in the mind of another a reasonable apprehension of instant death or grievous bodily harm. "Mere fear or threat by another is not sufficient to constitute a defense."

*Id.* at 385 (quoting 1 RONALD ABERDEEN ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 123, at 262 (1957)). As the court's language shows, *Harris* involved the complete absence of a threat. Harris's counsel suggested that the defendant did not know about the prison escape until 20 minutes before it occurred and had acquiesced in it only because he feared reprisal from the escapees if he did not. *Id.* at 384-85. There was no evidence of any threat, implicit or otherwise, that prompted the defendant's fear. *See id. Harris* is thus distinguishable. Harvill testified at length to the history, circumstances, and conduct that gave rise to his perception of Nolte's words as conveying an implicit threat. His testimony was in part corroborated by Nolte's testimony.

¶16 The State also cites *In re Disciplinary Proceeding Against Dornay*, 160 Wn.2d 671, 681, 161 P.3d 333 (2007), for the proposition that, absent evidence of an explicit threat or use of force, a duress defense fails. State's Answer to Pet. for Review at 2-3. *Dornay* rejected a duress defense because there was no evidence that the attorney had an " 'apprehension' " that " 'she or another would be liable to immediate death or immediate grievous bodily injury.' " *Dornay*, 160 Wn.2d at 681 (quoting RCW 9A.16.060(1)(a)). The court noted the lack of testimony about a threat or use of force only to illustrate the absence of evidence of "apprehension." *Id. Dornay* is unhelpful here because Harvill testified at length about his apprehension, and the question was whether he reasonably perceived an implicit threat. The jury should have been allowed to consider this question.

¶17 In sum, the trial court appeared to reject Harvill's duress instruction because Nolte never explicitly threatened Harvill. But there is no legal authority that requires a "threat" to be an *explicit* threat. The text, history, policy, and judicial interpretations of the duress statute indicate that an implicit threat arising indirectly from the circumstances can suffice to establish a threat. Accordingly, we hold that the trial court abused its discretion when it refused Harvill's duress instruction based on an erroneous view of the law. *Quismundo*, 164 Wn.2d at 504.

¶18  Assuming error, the Court of Appeals neverthe-less affirmed Harvill's conviction because it held that the trial court's error was harmless. It reasoned that, in reject-ing Harvill's entrapment defense, the jury necessarily would have rejected Harvill's duress defense. This conclu-sion is unsupported. The elements of duress differ from those of entrapment. Irrespective of any finding on entrap-ment, the jury could have found Harvill not guilty on the basis of duress because he testified that he reasonably perceived Nolte's requests for drugs as an implicit threat, and Nolte's testimony substantiated important facts under-lying Harvill's testimony. Whether Harvill's fear was rea-sonable and whether he would have sold cocaine to Nolte absent his fear was at the heart of the parties' contest below. Perhaps the jurors would have dismissed Harvill's testimony as a patent fiction, but the trial court's failure to instruct them on duress never gave them that chance. We decline to consider this error harmless.[4]

## CONCLUSION

¶19  The trial court abused its discretion by refusing to instruct the jury on the duress defense. Harvill presented sufficient evidence of fear arising from an implicit threat, and the jury should have had the opportunity to decide if this fear was reasonable and if Harvill would have sold cocaine to Nolte absent the threat. We reverse the Court of Appeals' decision affirming Harvill's conviction and re-mand for a new trial.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, CHAM-BERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

---

[4] The State conceded at oral argument that, if the defendant produced sufficient evidence to support the duress defense, failure to give the instruction would not be harmless error. Wash. State Supreme Court oral argument, *State v. Harvill*, No. 82358-8 (Jan. 14, 2010), at 33 min., 40 sec.—34 min., 14 sec., *video recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org.