237 P.3d 360 (2010)
STATE of Washington, Respondent,
v.
Martin John HEALY, Appellant.
No. 62994-8-I.
Court of Appeals of Washington, Division 1.
August 16, 2010.
*361 Ann Marie Summers, King County Prosecutor's Office, Seattle, WA, for Respondent.
Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Appellant.
BECKER, J.
¶ 1 On trial for burglarizing model homes, Martin Healy testified he had been forced into committing the crimes by two former associates who discovered he was a police informant. The trial court instructed the jury on the statutory defense of duress, including optional language explaining that the defense is not available if the defendant recklessly put himself in a situation in which it is probable he would be subject to duress. Healy contends the court should not have instructed the jury on the recklessness exception because it gutted his duress defense and was unwarranted by the evidence. Under the circumstances of this case, we conclude the court properly allowed the jury to consider the issue of recklessness.
¶ 2 On November 24, 2007, Renton police officers responding to a stolen vehicle signal stopped a white van that Martin Healy was driving. They arrested him. Inside the stolen van, officers found a stainless steel range oven, a microwave, and a computer. The items had been stolen from an unoccupied model home in a Renton development several blocks from where the van was stopped. Police noticed the home's front door was ajar and there were shoe prints indicating the door had been kicked in. A refrigerator was missing, along with a microwave and oven. The hose to the refrigerator had been cut, and water was running onto the kitchen hardwood floors.
¶ 3 Investigators matched shoe prints on the interior carpet to shoes Healy was wearing when he was arrested. There were different shoe prints on the upstairs floor. Marks on the floor suggested more than one person had dragged an appliance across it. Police discovered other homes in the development *362 had been broken into in a similar fashion.
¶ 4 A jury convicted Healy on charges of possession of a stolen vehicle, malicious mischief in the first degree, attempted second degree burglary, and two counts of second degree burglary. The primary issue on appeal is whether the evidence was sufficient to show that Healy could not avail himself of the defense of duress if he was in the situation due to his own reckless conduct.
¶ 5 To prove duress, a defendant must show:
(a) he participated in the crime under compulsion by another who by threat or use of force created an apprehension in his mind that in case of refusal he or another would be liable to immediate death or immediate grievous bodily injury; and (b) such apprehension was reasonable upon his part; and (c) he would not have participated in the crime except for the duress involved.
State v. Harvill, ___ Wash.2d ___, 234 P.3d 1166, 1168 (Wash.2010), paraphrasing RCW 9A.16.060(1). The statute includes a "recklessness exception": The defense of duress is not available if the defendant intentionally or recklessly placed himself in a situation in which it was probable he would be subject to duress. RCW 9A.16.060(3). This subsection tracks the language of the Model Penal Code: "The defense provided by this Section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress." MODEL PENAL CODE § 2.09(2) (1985). The drafters of the Model Penal Code anticipated this provision "will have its main room for operation in the case of persons who connect themselves with criminal activities." MODEL PENAL CODE § 2.09 cmt. 3, at 379 (1985).
¶ 6 At Healy's request, the trial court instructed the jury on the defense of duress, using the language of RCW 9A.16.060(1). Over Healy's objection, the court included the recklessness exception in RCW 9A.16.060(3).
¶ 7 Duress, an affirmative defense, must be established by a preponderance of the evidence. Harvill, 234 P.3d at 1168. The jury should not consider the defense of duress unless there is substantial evidence to support it. State v. Turner, 42 Wash.App. 242, 245, 711 P.2d 353 (1985) (citing State v. McKinney, 19 Wash.App. 23, 25, 573 P.2d 820 (1978)), review denied, 105 Wash.2d 1009, 1986 WL 420938 (1986). Each side is entitled to have the jury instructed on its theory of the case if there is evidence to support that theory. State v. Williams, 132 Wash.2d 248, 259-60, 937 P.2d 1052 (1997) (finding reversible error where the trial court refused a duress instruction because it judged the harm to the defendant was not immediate). A trial court has discretion to decide how jury instructions are worded and whether to give a requested instruction. State v. Walker, 136 Wash.2d 767, 771-72, 966 P.2d 883 (1998); Roberts v. Goerig, 68 Wash.2d 442, 455, 413 P.2d 626 (1966).
¶ 8 When Healy testified at trial, he admitted to kicking open the front doors of two model homes, attempting to break into a third home, and helping to move the refrigerator. He also admitted his criminal history. He had committed similar property crimes in the past; had been convicted of possession of stolen property, attempted burglary, and taking a motor vehicle without permission; and was imprisoned from 2004 until September 2006. However, he testified that he was forced to participate in the model home burglaries on November 24, 2007, because Robert Mattson and John Cotton threatened him and his 82 year old mother.
¶ 9 According to Healy, he first met Robert Mattson in late 2002, and the two stole cars and other items and used methamphetamine together. Healy testified that he and Mattson had a falling out at the time, "a combination of being high and an argument about stolen stuff," and Mattson attacked him by smashing the truck Healy was sitting in with a baseball bat. Healy said although he was injured, he was able to drive away and escape to his mother's house, where he lived.
¶ 10 Healy testified that to retaliate against Mattson for the baseball bat attack, he would find cars Mattson had stolen and dumped at a Renton location, and then park *363 the cars near Mattson's house. Healy said he did not know whether Mattson ever found out about this. Sometime after Healy was released from prison in the fall of 2006, he said, "I caught wind that he heard that I was out, and was looking for me." Healy testified he confronted Mattson and asked him if there was a problem, or if he owed him anything, but Mattson agreed to leave things in the past.
¶ 11 After being released from prison in 2006, Healy stole a truck and was arrested on a felony charge. He arranged with Bellevue Detective Jeffrey Christiansen to "work off" the charge by becoming a confidential informant. Over a period of months, he provided information to Christiansen about Mattson and Mattson's associate, Cotton. This arrangement hit a snag in October 2007. Healy testified that he was cleaning his truck in a back alley by his mother's house when he received a call from Cotton, who wanted to meet with him. Healy told Cotton he did not want him coming to his mother's place, so they agreed to meet at a nearby convenience store. But instead, Mattson drove up to Healy's mother's house with Cotton, saw Healy, and began cursing at him and calling him a rat and a snitch. Healy told Mattson he had no business being around his mother's house. Healy described an escalating encounter that involved him driving off to lead Mattson and Cotton away from his mother's house, and the two men pursuing him until he pulled into a coffee shop where police cars were parked. After that, Healy did not see Mattson's car again, but Mattson and Cotton reportedly called him another six times to make threats.
¶ 12 Healy testified that he immediately called Detective Christiansen after this incident. But he did not ask him to arrest Mattson and Cotton, or agree to the detective's offer that he wear a wire; he also did not complain to Renton Police. He said he did not want to "put it over the airwaves" that he was working as a confidential informant.
¶ 13 Healy told the jury that Mattson called him early on November 3, 2007, threatening to set fire to Healy's mother's house. Healy immediately called 911 and drove to the house, where two Renton police officers met him. He told the officers what had happened and that he was scared for his 82 year old mother, who was in the house, and asked them to patrol the area.
¶ 14 According to Healy, things came to a head shortly before 4 a.m. on November 24, 2007, when Healy returned to his mother's house after a night out. Healy testified that when he drove up, he spotted Mattson and Cotton coming toward him; Cotton said, "What are you going to do now, bitch?" According to Healy, a black Chevrolet Astro van had pulled into the alleyway and blocked his vehicle. Mattson and Cotton told Healy they were not going to allow him "to take them down." They told Healy to turn around and look behind him, and Healy saw someone standing near his mother's house shining a flashlight toward him. Healy testified that he felt vulnerable because his mother routinely left the back door unlocked. Mattson said, "Get in the fucking van. We wouldn't want nothing to happen to your mom's."
¶ 15 Healy testified he was fearful for his mother. He said that when he got into the black van, Mattson put a screwdriver to his neck. Meanwhile, Cotton punched him hard in the torso, and both men accused Healy of being a rat or a snitch and questioned him for about 20 minutes. Mattson and Cotton repeated they were not going to let Healy "take them all down." According to Healy, Mattson "persisted that this was all behind one payment, andfor priorbefore prison, prior activities that I owed him, and the consequences would be my mom's house, if I didn't pay him somethinggive him something."
¶ 16 Healy testified the black van pulled up to the housing development. Mattson ordered Healy to kick in the doors of houses and get stainless steel appliances. Healy said he did as he was told because he was worried about the person with the flashlight who had remained at his mother's house. He helped load the refrigerator and two ovens from the model home into a white Econoline van parked outside. Then they drove to another house, where the refrigerator was moved to the black van and other *364 items were put in the white van. Mattson and Cotton left in the black van, ordering Healy to remain in the back of the white van. Healy testified that he wanted to break away from Mattson and Cotton, so he slid behind the wheel of the white van and drove in the opposite direction from where he thought the other two had gone. Healy said he had considered escaping earlier, but had not found a chance and was afraid of being hurt or shot. He remained concerned that someone had entered his mother's house. Healy said the whole incident "was like being in a war zone."
¶ 17 Less than a minute after he had pulled onto the main road, Healy was pulled over by Renton Police. They had received an electronic signal from the van, which had been reported stolen. Healy testified that he immediately thought Cotton and Mattson had set him up.
¶ 18 The defense called other witnesses who corroborated portions of Healy's account. Renton Detective Fredrick Yohann, who questioned Healy the day after the arrest, testified Healy told him Mattson and Cotton threatened to hurt his mother if he did not assist them with the burglaries. Scott Conrad, a corrections officer at the Kent Regional Justice Center, testified he witnessed Cotton threaten Healy on September 11, 2008, when Healy was jailed awaiting trial on the current charges and Cotton was entering as a new inmate. The officer questioned Cotton, who told him, "If you let me out of the cell, I am going to fuck him up." Officer Conrad wrote a report on the incident and deemed it more serious than a "usual" jailhouse threat.
¶ 19 Bellevue Detective Jeffrey Christiansen confirmed that Healy had been serving as a confidential informant in order to "work off" the felony arrest for stealing a truck and that he wanted Healy to inform on Mattson, who was a suspect in a string of burglary and auto thefts. According to Detective Christiansen, Healy told him that while it would be difficult to get close to Mattson, he was in a position to do so because he knew about Mattson's activities and methods. Christiansen testified that Healy had provided information that led to arrests and convictions and was thus determined to be reliable, and that he provided firsthand information on Mattson and others who stole cars. Christiansen also testified that he offered to arrange a body wire for Healy in November 2007 to garner evidence of Mattson's threats, but Healy declined. Christiansen said Healy could have terminated his informant contract if he was concerned about his safety or his mother's safety.
¶ 20 The court determined that Healy was entitled to an instruction on the defense of duress. However, Healy objected vigorously to the State's proposal to include the language of the recklessness exception: "The defense of duress is not available if the defendant intentionally or recklessly placed himself in a situation in which it was probable that he would be subject to duress." The Washington Pattern Jury Instruction on duress includes this language in brackets, indicating it can be used "as applicable." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.01 (3d ed. 2008) (WPIC). The court determined that if the optional language were included, the jury should also be given an instruction defining recklessness:
A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.
Recklessness also is established if a person acts intentionally or knowingly.
Instruction 28; see WPIC 10.03 (3d ed.2008); see also RCW 9A.08.010(1)(c).
¶ 21 Defense counsel conceded Healy might have known of the risk that Mattson would become angry and want to hurt him or his mother when he learned Healy was informing on him. But, counsel argued, Healy could not have reasonably known of the specific risk that Mattson would force him to participate in crimes. Defense counsel also argued the "recklessness exception" was against public policy because of the possibility the jury would think it was reckless for Healy to agree to serve as a confidential informant. The trial court expressed similar *365 concerns and heard extensive argument on the instructional issue, but ultimately concluded recklessness was an issue of fact for the jury to decide as part of Healy's claim of duress. Accordingly, the court gave the jury an instruction on the defense of duress with the recklessness exception included (instruction 27), accompanied by an instruction on the definition of recklessness (instruction 28).
¶ 22 In making this determination, the trial court found minimal Washington case law, and therefore appropriately considered cases from other jurisdictions that incorporate the recklessness exception into the duress defense either by statute or under the common law. A Maryland case, Williams v. State, 101 Md.App. 408, 646 A.2d 1101 (Md.Ct. Spec.App.1994), cert. denied, 337 Md. 90, 651 A.2d 855 (1995), applied the Model Penal Code version of the recklessness exception under somewhat similar facts. There, the defendant, a drug runner, testified he committed attempted robbery under duress by abductors who threatened to kill him if he did not repay his debt by leading them to the organization's drug stash. The appellate court affirmed the trial court's decision not to instruct on duress at all:
Because Williams's prior conduct contributed mightily to the predicament in which he later found himself, the trial court did not err in concluding that the defense of duress was inapplicable to the instant case.... By becoming involved with this drug ring, Williams through his own recklessness made others aware of his connection with [the ring leader], including his abductors. Williams was readily identifiable to those in the organization, including his abductors, and the abductors acted accordingly. This was a situation that would not have occurred but for Williams's association with the drug organization. Considering these facts and the applicable law, we conclude that Williams's assertion that the defense of duress applies is unavailing.
Williams, 646 A.2d at 1110.
¶ 23 The Colorado Court of Appeals reached a similar result in People v. Bailey, 41 Colo.App. 385, 590 P.2d 508 (1978), aff'd, 630 P.2d 1062 (1981). The defendant, a prison counselor, was charged with narcotics offenses based on a sting operation in which undercover agents posing as drug traffickers contacted him about taking over the trafficking he had been conducting in penal institutions. The defendant set up meetings between the agents and his suppliers, and the deals took place. The defendant claimed the conduct of the undercover agents, who posed as mafia gangsters and talked of eliminating "snitches," constituted duress. But the appellate court noted the defense was not available because "defendants intentionally or recklessly placed themselves in a situation in which it was foreseeable that they might be subjected to force or threatened use of force." Bailey, 590 P.2d at 510, citing Colo. Rev.Stat. § 18-1-708; see also U.S. v. Liu, 960 F.2d 449 (5th Cir.), cert. denied, 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992).
¶ 24 In an Arkansas case, the defendant tried to rob a nursing home and claimed that some men to whom he owed money picked him up and "were going to use him to rob some place in order to collect their money." Meador v. State, 10 Ark.App. 325, 664 S.W.2d 878, 880 (Ark.App.1984). Meador objected to the trial court's instruction that duress is not a defense if he "recklessly placed himself in a situation in which it was reasonably foreseeable that he would be subjected to the force or threatened force." Meador, 664 S.W.2d at 881. The Arkansas Court of Appeals summarily concluded the recklessness exception was properly included in the instruction:
From the evidence adduced at trial, particularly the testimony of the appellant concerning why he owed the debt to the men who allegedly forced him to rob the nursing home, it could be inferred that the appellant's drug dependence placed him in the position to be forced by these men to do something he might otherwise not do. Thus the trial court's instruction that the appellant could not claim the defense if he recklessly put himself in that position was proper under the circumstances of this case.
Meador, 664 S.W.2d at 881.
¶ 25 The one Washington case on point is McKinney, 19 Wash.App. 23, 573 P.2d 820 *366 (1978), and it does not dictate a different result. In McKinney, the defendant and a companion, both of whom had escaped from a work release program, went to a tavern near their apartment for several hours. McKinney, 19 Wash.App. at 24, 573 P.2d 820. Around midnight, McKinney's companion suggested they rob the tavern, and McKinney got a paper bag in which to put the money. The associate then pointed a gun at the bartender and told McKinney to get the money from the till, which McKinney did. At trial, McKinney claimed he took the money from the till under duress because if he had not cooperated, either he or the bartender might have been shot. McKinney, 19 Wash.App. at 24-25, 573 P.2d 820. The Court of Appeals affirmed the trial court's refusal to instruct the jury on the defense of duress: "One who intentionally or recklessly places himself in a situation in which it is probable that he will be subject to duress is not afforded the defense." McKinney, 19 Wash.App. at 25, 573 P.2d 820, citing RCW 9A.16.060(3).
¶ 26 Against this countervailing authority, Healy cites U.S. v. Paolello, 951 F.2d 537 (3rd Cir.1991). There, the Third Circuit Court of Appeals determined the defendant was improperly disqualified from raising the defense of justification under the rationale that he had been reckless. Paolello, 951 F.2d at 542-43. The defense of justification under federal law is functionally similar to Washington's duress doctrine, as it requires that the defendant "`did not recklessly place himself in a situation where he would be forced to engage in criminal conduct.'" Paolello, 951 F.2d at 540, quoting U.S. v. Crittendon, 883 F.2d 326, 330 (4th Cir.1989).
¶ 27 According to testimony at trial, Paolello got into an argument in a bar. When Paolello left, accompanied by his stepson, the man who had been arguing with him followed him out, demanding that Paolello buy him a drink. The man hit Paolello's stepson and fired a gun into the air. Paolello, 951 F.2d at 539. Paolello grabbed the attacker's hand, the gun fell to the ground, and both men struggled for it. Paolello seized the gun and ran. At this point the police, notified of a fight in progress, arrived and apprehended Paolello. He was charged with and convicted of being a felon in possession of a firearm. The government argued that Paolello could not assert a justification defense because he had been reckless in going to a disreputable bar and leaving the bar after the dispute over the drink, "even though he had reason to believe there would be trouble if he did that." Paolello, 951 F.2d at 541. The court reasoned, however, that no reasonable trier of fact could find that such lawful conduct was reckless "so as to deprive Paolello of a justification defense which he might otherwise have." Paolello, 951 F.2d at 541.
¶ 28 Unlike in Paolello, there was evidence here to support a conclusion that Healy was reckless. Healy's account about how he came to be coerced into burglary showed he had long been connected with unlawful activity involving Mattson. Before Healy became an informant, he and Mattson had a falling out over stolen property and drugs; Mattson attacked him with a baseball bat, and Healy retaliated by moving stolen cars to the area around Mattson's house. Later, after Healy got out of prison, he was arrested for stealing a truckunlawful conduct that led him to become a confidential informant and, by his own account, the object of Mattson's hostility once again. This evidence would support a jury determination that Healy recklessly created the predicament in which he allegedly found himself on the night of the burglaries.
¶ 29 Further, when Mattson and Cotton allegedly threatened arson and violence against Healy's mother, Healy had the opportunity to file charges against them, to wear a wire to obtain proof of their threatening conduct, or to terminate his work as an informant, but he declined to do so. While it is not unlawful to decide to handle threats on one's own, given the circumstances of Healy's history with Mattson and Mattson's apparent awareness that Healy had become an informant, a jury could reasonably conclude Healy recklessly rejected these options.
¶ 30 The instruction provides that duress is not an available defense if the actor intentionally or recklessly placed himself in a situation "in which it was probable that he would be subject to duress." Healy concedes the evidence would support a finding that his *367 hostile encounters with Mattson placed him in a situation in which it was probable that he would be subject to some form of retaliation. But he maintains he had no reason to suspect that Mattson's hostility would take the form of coercing him to commit a crime, so the jury should not have been allowed to consider the recklessness exception. We disagree. The specific scenario of being pressed into crime against one's will by former criminal associates is not so unusual as to foreclose submitting this issue to the jury.
¶ 31 Healy also argues it was against public policy to instruct on the recklessness exception in these circumstances because confidential informants are socially beneficial, and a jury should not be allowed to decide that becoming a confidential informant is a reckless act. The State did not argue to the jury, and we do not hold, that defendants who are informants are automatically disqualified from claiming the defense of duress. Rather, we approve of the trial court's decision to allow the jury to decide the recklessness issue as a question of fact.
¶ 32 Williams, Liu, Bailey, and McKinney indicate the issue of recklessness can be decided as a matter of law in some cases so that the defendant is not entitled to a duress instruction at all. But under the circumstances of this case, allowing the jury to decide was consistent with the approach our Supreme Court recently took in Harvill, 234 P.3d 1166. In Harvill, the trial court refused to give a duress instruction "on the ground that evidence of an explicit threat was necessary, whereas Harvill's evidence showed only an implicit threat." Harvill, 234 P.3d at 1166. The Supreme Court held this was an erroneous view of the law and the existence of the threat was for the fact finder to decide:
Whether Harvill's fear was reasonable and whether he would have sold cocaine to Nolte absent his fear was at the heart of the parties' contest below. Perhaps the jurors would have dismissed Harvill's testimony as a patent fiction, but the trial court's failure to instruct them on duress never gave them that chance.
Harvill, 234 P.3d at 1170-71.
¶ 33 Here too, the jurors might have decided that Healy's testimony was largely fictional.[1] But the trial court followed the letter of the statute and allowed Healy the opportunity to prove duress, while also allowing the jury to consider the statutory exception to the defense. We conclude there was no abuse of discretion.
¶ 34 Healy also raises an issue concerning his sentence, as to which the State has conceded error. At a hearing on February 6, 2009, Healy was sentenced to standard range terms on the felony counts. He also received a suspended term on a misdemeanor count of attempted bail jumping, which was severed for trial and to which Healy pleaded guilty. His total prison term was 61 months. The judgment and sentence shows terms of 51 and 61 months respectively on the two second degree burglary convictions, and 61 months on the attempted burglary conviction. This is incorrect, because 61 months was outside Healy's standard range for attempted burglary, and it is clear from the report of proceedings that what the court intended was to impose terms of 61 months on the two burglary convictions and a term of 51 months on the attempted burglary conviction, all to be served concurrently. We accept the State's concession and remand solely for the correction of this scrivener's error, so that the judgment accurately reflects the sentence the trial court intended.
¶ 35 Remanded to correct a scrivener's error in the sentence. The judgment and sentence is otherwise affirmed.
WE CONCUR: SPEARMAN, J., and DWYER, C.J.
NOTES
[1] We note that the trial court rejected Healy's request for an exceptional sentence downward based on the failed defense of duress.