

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 1 9 2020

CHIEF JUSTICE

This opinion was
filed for record
at 8 am on March 19, 2020

Deputy

for Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 96777-6 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ALAN WHITAKER, | ) | |
| | ) | |
| Petitioner. | ) | Filed __MAR 1 9 2020__ |
| | ) | |

GONZÁLEZ, J.— Duress generally excuses a person who commits a crime if they are threatened with immediate death or grievous bodily injury. RCW 9A.16.060. Faced with such grave danger, a person may be excused for choosing the lesser evil. *State v. Harvill*, 169 Wn.2d 254, 262, 234 P.3d 1166 (2010). But because killing an innocent person is never the lesser of two evils, a duress defense is not available when a person is charged with murder. *Id.*; RCW 9A.16.060(2). John Whitaker was convicted of aggravated first degree murder based on the aggravating circumstance that the murder was committed in the course of a kidnapping. He unsuccessfully sought to argue to the jury that he committed the

kidnapping under duress. Because Whitaker was charged with murder, not

kidnapping, the Court of Appeals held he was not entitled to assert a duress

defense. We affirm.

FACTS

In 2002, Rachel Burkheimer was brutally murdered. Two years later, a jury

found Whitaker guilty of aggravated first degree murder and conspiracy to commit

murder based on his part in her death. Whitaker's convictions were reversed on

collateral review in 2013 due to a public trial right violation.[1] On remand, the

State again charged Whitaker with one count of aggravated first degree murder

predicated on kidnapping and robbery and one count of conspiracy to commit first

degree murder. The State presented evidence that Whitaker helped his friend John

Anderson and several others kidnap and kill Burkheimer, Anderson's ex-girlfriend,

in Everett in September 2002. Whitaker helped Anderson and others lure

Burkheimer to a home, beat and bind her, hide her in a garage, and take her to a

remote area. There, Whitaker helped to dig a grave, take her clothes and jewelry,

and bury her body after Anderson shot her.

At the close of the evidence, Whitaker unsuccessfully requested the jury be

instructed on duress as a defense to the robbery and kidnapping aggravators. His

---

[1] *See In re Pers. Restraint of Whitaker*, No. 61980-2-I, slip op. at 2 (Wash. Ct. App. June 17, 2013) (unpublished), http://www.courts.wa.gov/opinions/pdf/619802.pdf.

theory was that he acted out of fear of Anderson. The trial court concluded there was insufficient evidence to support giving a duress instruction.

The jury found Whitaker guilty of premeditated first degree murder with an aggravating circumstance of kidnapping.[2] Whitaker appealed on numerous grounds, and the Court of Appeals affirmed. *See State v. Whitaker*, 6 Wn. App. 2d 1, 10, 429 P.3d 512 (2018). Among other things, the Court of Appeals concluded the trial court properly denied Whitaker's request for a duress instruction because duress may not be asserted as a defense to an aggravating circumstance of murder. *Id.* at 15. We granted Whitaker's petition for review on the issue of duress. *See State v. Whitaker*, 193 Wn.2d 1012 (2019).

## ANALYSIS

The duress defense is based on the principle that it may be excusable to break the law if compelled to do so to avoid immediate death or grievous bodily harm. *State v. Mannering*, 150 Wn.2d 277, 281, 75 P.3d 961 (2003) (citing ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 1059 (3d ed. 1982)). However, at common law, duress was not a defense to murder on the principle that it was better to die than to take an innocent person's life. *Id.* (citing WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 5.3(b) (2d ed. 1986); PERKINS

---

[2] The jury also found him guilty of conspiracy to commit murder and found he or an accomplice was armed with a firearm. It did not reach the robbery aggravator. Clerk's Papers at 474, 477-78.

3

& BOYCE, *supra,* at 1059). As we explained in *Harvill*, "Faced with danger to his or another's safety, the defendant is excused for choosing the lesser evil of perpetrating a crime, unless the crime involves killing an innocent person, which is never the lesser of two evils." 169 Wn.2d at 262.

Our legislature codified the common law duress defense as part of a comprehensive criminal code in 1909. *See* LAWS OF 1909, ch. 249, § 4. As originally enacted, the duress statute incorporated the common law bar on duress as a defense to murder. *Id.* The legislature subsequently extended the bar on duress to manslaughter and homicide by abuse. *See* LAWS OF 1975, 1st Ex. Sess., ch. 260; LAWS OF 1999, ch. 60, § 1. Today, the statute provides in relevant part:

(1) In any prosecution for a crime, it is a defense that:

(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury; and

(b) That such apprehension was reasonable upon the part of the actor; and

(c) That the actor would not have participated in the crime except for the duress involved.

(2) The defense of duress is not available if the crime charged is murder, manslaughter, or homicide by abuse.

(3) The defense of duress is not available if the actor intentionally or recklessly places himself or herself in a situation in which it is probable that he or she will be subject to duress.

4

RCW 9A.16.060. By barring duress as a defense to murder and manslaughter and requiring an apprehension of *immediate* death or grievous bodily injury, our duress statute imposes stringent requirements. *State v. Riker*, 123 Wn.2d 351, 365-66, 869 P.2d 43 (1994). Those stringent requirements reflect "the law's traditional skepticism regarding the defense of duress." *Id.* As a matter of public policy, "the defense should be limited" because one who successfully raises it "is freed from criminal liability for harm caused to an innocent third party." *Id.*

Whitaker was charged with aggravated first degree murder under RCW 10.95.020(11)(d). Under that statute, aggravated first degree murder consists of premeditated first degree murder as defined by RCW 9A.32.030(1)(a) and a statutory aggravating circumstance. In this case, the proven statutory aggravator was that "[t]he murder was committed in the course of, in furtherance of, or in immediate flight from . . . [k]idnapping in the first degree." RCW 10.95.020(11)(d). A person convicted of aggravated first degree murder was eligible for the death penalty. RCW 10.95.040, .050. In *State v. Gregory*, 192 Wn.2d 1, 5, 427 P.3d 621 (2018) (plurality opinion), we held the death penalty provisions unconstitutional as applied because they have been administered in an arbitrary and racially biased manner and have failed to serve any legitimate

penological goals. As a result, the sentence for aggravated first degree murder is now life imprisonment without the possibility of parole. RCW 10.95.090.

Whitaker argues that a criminal defendant charged with aggravated murder under RCW 10.95.020(11)(d) may assert duress as a defense to the aggravating circumstance of kidnapping. Whether the duress statute allows the defense to be asserted to an aggravating circumstance that elevates premeditated first degree murder to aggravated murder is a question of law that we review de novo. *See State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). When interpreting the scope of a statute, our fundamental goal is to "ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). To determine the legislature's intent, we begin with the statute's plain meaning as "discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). If the plain meaning is unambiguous, we give it effect. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

The plain meaning of the duress statute unambiguously bars duress as a defense to the aggravating circumstance in RCW 10.95.020(11)(d). The statute provides that "[i]n any prosecution for a crime," it is a defense that the actor "participated in the crime" under duress, unless "the crime charged is murder,

manslaughter, or homicide by abuse." RCW 9A.16.060(1)(a), (2). Under this plain language, a criminal defendant may assert duress as a defense to a *charged* crime so long as it is not murder, manslaughter, or homicide by abuse. A defendant who is charged with aggravated first degree murder under RCW 10.95.020(11) is not charged with the underlying felony. Rather, the defendant is charged with aggravated first degree murder, and the State is required to prove, as an element of the murder charge, that the murder was committed "in the course of, in furtherance of, or in immediate flight from" the underlying felony. RCW 10.95.020(11).

Whitaker argues that under *State v. Allen*, 192 Wn.2d 526, 431 P.3d 117 (2018), a kidnapping aggravating circumstance is effectively a separately charged crime and that, as such, a defendant is entitled to all statutory defenses, including duress. In *Allen*, we held that double jeopardy bars retrial on aggravating circumstances under RCW 10.95.020 after acquittal. *Id.* at 534. We reasoned that aggravating circumstances are elements of aggravated first degree murder for double jeopardy purposes because they increase the mandatory minimum penalty for the crime. *Id.* We did not find, as Whitaker argues, that aggravating circumstances are separately charged crimes.

This court held long ago that when a felony is an element of murder, duress may not act as an affirmative defense to the underlying felony. *See State v. Moretti*, 66 Wash. 537, 539-41, 120 P. 102 (1912); *State v. Ng*, 110 Wn.2d 32, 39,

7

750 P.2d 632 (1988). The legislature has indicated no discontent with these decisions. In *Moretti*, the defendant was convicted of first degree felony murder predicated on robbery. 66 Wash. at 539-41. On appeal, he argued that the trial court should have let the jury consider his claim that he participated in the robbery resulting in the victim's death under duress. *Id.* This court cited the predecessor to the modern duress statute, which provided that

> "[w]henever any crime, except murder, is committed or participated in by two or more persons, any one of whom participates only under compulsion by another engaged therein, who by threats creates a reasonable apprehension in the mind of such participator that in case of refusal he is liable to instant death or grievous bodily harm, such threats and apprehension constitute duress, which will excuse such participator from criminal prosecution."

*Id.* at 540 (quoting REM. & BAL. CODE § 2256). The court concluded that "the very terms" of the statute precluded the defendant from asserting duress. *Id.* at 541. Just like first degree felony murder, aggravated first degree murder criminalizes killing in the course of committing another crime. *Compare* RCW 9A.32.030(c), *with* RCW 10.95.020(11). When a defendant is charged with either type of murder, the underlying felony is not a freestanding, separately charged and prosecuted crime for which a defendant may assert duress as a defense.

Whitaker contends that aggravated murder is not analogous to felony murder because aggravated murder is defined in Washington's capital punishment statute. He argues that the legislature, to comply with the dictates of the constitution, intended for the death penalty to be allowed only in narrow circumstances. *See*

8

Suppl. Br. of Pet'r at 11 (citing *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972); *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (plurality opinion) (requiring that juror discretion to impose the death penalty be sufficiently narrow and directed in order to minimize the risk of arbitrary and capricious action)). He reasons that the legislature must have intended duress to be available as a defense in order to narrow death penalty eligibility. But he cites no sources of legislative history to support this argument, and the legislature's general intent to craft a constitutional death penalty statute falls far short of showing that the legislature specifically intended to allow a duress defense.

Related provisions of the capital punishment statute in fact support our conclusion that the legislature did not intend to allow duress as a defense to aggravating circumstances. The legislature expressly provided for duress to be considered, not in determining whether a defendant is guilty of aggravated murder but as a mitigating circumstance in deciding whether to impose a death sentence for the crime. *See* LAWS OF 1981, ch. 138, § 7(5) (*codified as* RCW 10.95.070(5)); LAWS OF 1977, 1st Ex. Sess., ch. 206, § 4(2)(e) (*codified as* RCW 9A.32.045, *repealed by* LAWS OF 1981, ch. 138, § 24). The legislature's inclusion of duress as a mitigating circumstance at sentencing suggests that had the legislature intended duress to be a defense to an element of the crime, it would have said so.

9

Our interpretation of the duress statute not only gives effect to its plain meaning, but is also consistent with the public policy underlying the bar on duress as a defense to murder and manslaughter. Whitaker argues that if he would otherwise be excused from kidnapping due to duress, it makes little sense to treat him as if he had no excuse for such conduct in the context of an aggravated murder prosecution. But there is a critical difference between a freestanding kidnapping charge and the kidnapping element in an aggravated first degree murder prosecution. In an aggravated murder prosecution, the State is required to prove that the murder was committed in the course of or in furtherance of the felony. RCW 10.95.020(11). To meet this burden, the State must prove a sufficiently "'intimate connection'" between the killing and the felony. *State v. Brown*, 132 Wn.2d 529, 608, 940 P.2d 546 (1997) (quoting *State v. Golladay*, 78 Wn.2d 121, 132, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt*, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976), and citing *State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990)). As a result, the felony aggravating circumstance necessarily involves taking a life. Barring duress as a defense to the felony in this context is consistent with the legislature's policy that duress does not excuse a crime that involves killing an innocent person. *See Harvill*, 169 Wn.2d at 262.

CONCLUSION

Under Washington law, the duress defense is not available if the crime charged is murder, manslaughter, or homicide by abuse. RCW 9A.16.060(2). Consistent with the plain language of RCW 9A.16.060 and the public policy underlying the exception to the defense, we hold that duress is not a defense to an aggravating circumstance in RCW 10.95.020 because the charged crime is murder. Accordingly, we affirm.[3]

---

[3] The State also argues that the trial court properly found there was insufficient evidence to support a duress defense. Because we find the defense was not available as a matter of law, we need not consider the sufficiency of the evidence.

11

_Gonzále, J._

WE CONCUR:

_Stephens, CJ_

_Johnson, J._

_Fairhurst, JPT_

_Owens, J._

_Yu, J._

No. 96777-6

MADSEN, J. (concurring)—The majority holds that duress is not available as a defense to the crime of first degree kidnapping, which was applied in this case to elevate defendant John Whitaker's first degree murder conviction to aggravated murder. I disagree that as a matter of law duress is not available to the crime of kidnapping in this circumstance and would hold that a duress instruction would be available, provided the particular facts of the case warrant the giving of such instruction. Here, as the trial court properly determined, the facts of this case did not warrant giving a duress instruction and for that reason, I concur that the trial court did not err in declining to give defendant's proffered duress instruction.

I

Here, the trial court instructed the jury as follows:

> To convict the defendant of the crime of murder in the first degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 23rd day of September, 2002, the defendant or a person to whom he was an accomplice acted with intent to cause the death of Rachel Rose Burkheimer;
> (2) That the intent to cause the death was premeditated;
> (3) That Rachel Rose Burkheimer died as a result of the defendant's acts or the acts of the person to whom he was an accomplice; and
> (4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

Clerk's Papers at 490 (Instr. 8). The jury was then instructed:

*If* you find the defendant guilty of premeditated murder in the first degree as defined in Instruction 8, you must *then* determine whether any of the following aggravating circumstances exist:

. . . .

The murder was committed in the course of, in furtherance of, or in immediate flight from kidnapping in the first degree.

The State has the burden of proving the existence of an aggravating circumstance beyond a reasonable doubt. In order for you to find that there is an aggravating circumstance in this case, you must unanimously agree that the aggravating circumstance has been proved beyond a reasonable doubt.

*Id.* at 495 (Instr. 13A) (emphasis added). The jury was also instructed:

A person commits the *crime* of *kidnapping in the first degree* when he or she intentionally abducts another person with intent to inflict bodily injury on the person or to inflict extreme mental distress on that person or on a third person.

*Id.* at 498 (Instr. 15) (emphasis added).

As can be seen, the instructions identify first degree kidnapping as a "crime," the application of which as an aggravator is to be considered only after the jury has determined that the State has proved beyond a reasonable doubt that the defendant is guilty of premeditated first degree murder. Further, such aggravator is to be applied only if the State has proved beyond a reasonable doubt the existence of the aggravator (that is, proved all elements defining first degree kidnapping as contained in instruction 15), and the jury must unanimously agree that the aggravating circumstance has been proved beyond a reasonable doubt. As instructed, first degree kidnapping, while used as an

2

aggravator, is identified as a separate crime with separate elements. In this circumstance, in my view, the duress defense is available concerning the jury's determination regarding the distinct crime of first degree kidnapping.

The majority relies on the rule that the duress defense does not apply to murder. But while the charge here is aggravated murder, defendant seeks to apply the duress defense to the "crime of kidnapping in the first degree" as defined in instruction 15, not murder. *Id.* at 498. Notably, if the duress defense were successfully applied here, it would not foreclose defendant's conviction for premeditated first degree murder; it would only foreclose use of the crime of first degree kidnapping as an aggravator. Accordingly, in this circumstance, in my view the duress defense is available as to the asserted "crime" of first degree kidnapping.

Nevertheless, as discussed below, although conceptually available, I agree that the trial court did not err in declining to give an instruction on the duress defense. This is so only because the evidence was insufficient to warrant such an instruction, as the trial court correctly ruled. *See* Verbatim Report of Proceedings (VRP) (June 24, 2016) at 61-62.

II

"A defendant is entitled to a jury instruction that is supported by substantial evidence in the record." *State v. O'Dell*, 183 Wn.2d 680, 687, 358 P.3d 359 (2015). "In determining whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must view the evidence in the light most favorable to the

defendant." *Id.* at 687-88. Where, as here, the trial court's refusal to give a jury instruction is based on a factual determination, we review that decision for abuse of discretion. *State v. Schierman*, 192 Wn.2d 577, 651, 438 P.3d 1063 (2018) (plurality opinion); *see also State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010) (trial court's decision to not give a duress instruction based on lack of evidentiary support is reviewed for abuse of discretion). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A court's decision is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Id.* A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. *Id.*

RCW 9A.16.060, which defines the duress defense, provides in relevant part:

> (1) In any prosecution for a crime, it is a defense that:
>     (a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury; and
>     (b) That such apprehension was reasonable upon the part of the actor; and
>     (c) That the actor would not have participated in the crime except for the duress involved.
>     (2) The defense of duress is not available if the crime charged is murder, manslaughter, or homicide by abuse.
>     (3) The defense of duress is not available if the actor intentionally or recklessly places himself or herself in a situation in which it is probable that he or she will be subject to duress.

Here, the trial court did not abuse its discretion in declining to give a duress instruction. Viewing the evidence in the light most favorable to Whitaker, a reasonable

person could conclude there was not substantial evidence that Whitaker participated in the kidnapping under a reasonable apprehension of immediate death or grievous bodily injury.

Whitaker did not testify, and there was no direct evidence proffered at trial that Whitaker was afraid he would be killed or injured if he did not participate in the events that ultimately resulted in Rachel Burkheimer's death. As the majority correctly notes, Whitaker helped his friend John Anderson and several others lure Anderson's ex-girlfriend, Burkheimer, to a home where she was bound, gagged, beaten, and then taken to a remote area where Anderson shot her to death and Whitaker and others buried her.

The evidence presented at trial did show that Anderson carried a gun and told the participants to take various actions throughout the night. The evidence also indicated that Anderson struck Whitaker and another man (Jeffrey Barth) before Anderson attacked Burkheimer.[1] Whitaker later told FBI (Federal Bureau of Investigation) agents that he was intimidated by Anderson because Anderson was a larger man than Whitaker. 7 VRP at 1386.

Matt Durham, who was 17 years old, and 18-year-old Maurice Rivas testified that they participated because they were afraid of Anderson. Durham, the driver, testified that Anderson struck him in the back of the head to correct Durham's erratic driving as they

---

[1] When Anderson arrived at the home where Burkheimer had been lured, he found Whitaker and Barth "kidding with Rachel [Burkheimer]." 7 VRP at 1386. After Anderson struck Whitaker in the chest, he then punched Burkheimer in the face, knocking her to the floor, and sat on her to subdue her; he then continued to beat her. Whitaker joined in the beating, kicking Burkheimer as she lay on the floor.

traveled to the remote location where Burkheimer was killed. 6 VRP at 1256. He stated that he didn't leave because he was "young" and "scared." *Id*. at 1262. Durham also testified that after Burkheimer's body had been buried, Anderson returned to the car and indicated that he "doesn't tolerate snitches" and would kill anyone who talked. *Id*. at 1264. Rivas, who helped dig Burkheimer's grave and bury her body, testified on cross-examination that he participated because Anderson told him to and he was "trying not to get shot." 11 VRP at 2064.

But the evidence also showed that unlike Durham and Rivas, who were the youngest in the group and at the bottom of the informal hierarchy, Whitaker (22 years old) was older than Anderson (20 years old); he was also closer to the group's oldest member, Kevin Jihad (32 years old), and Anderson in the hierarchy. Whitaker had also been Anderson's roommate for some time and was Anderson's closest friend in the group. 9 VRP at 1788. In addition, Whitaker observed other participants leave at various times throughout the night without suffering any consequences. 8 VRP at 1563. When Anderson started assaulting Burkheimer, for example, Barth walked out of the duplex. *Id*. at 1551. Later, as the group held Burkheimer in the home's garage while Anderson contemplated what to do next, another participant, Tony Williams, decided he had had enough and left the residence. *Id*. at 1563. By contrast, Whitaker, who had been sitting on the sofa with Burkheimer talking and laughing with her prior to Anderson's arrival, joined in beating Burkheimer as she lay on the floor when Anderson attacked her. *Id*. at 1549-50. Whitaker then helped tie her up. 7 VRP at 1386.

6

This court has explained, "'[D]uress is a defense only where it is shown that the threats of one person have created in the mind of another a reasonable apprehension of instant death or grievous bodily harm. Mere fear or threat by another is not sufficient to constitute a defense.'" *Harvill*, 169 Wn.2d at 262 (alteration in original) (internal quotation marks omitted) (quoting *State v. Harris*, 57 Wn.2d 383, 385, 357 P.2d 719 (1960)). In *Harvill*, this court determined that the trial court abused its discretion in refusing to give a duress instruction. But there, the defendant "testified at length to the history, circumstances, and conduct that gave rise to his perception of [the informant's] words as conveying an implicit threat. [And defendant's] testimony was in part corroborated by [the informant's] testimony." *Id.* at 263. No similar evidence is present in this case.

On these facts, and given the provisions of the duress statute, which require a reasonable apprehension of immediate death or grievous bodily injury, it cannot be said that the trial court's refusal to give a duress instruction lay outside the range of acceptable choices, in light of the facts and the applicable legal standard. *See Lamb*, 175 Wn.2d at 127; *State v. Dixon*, 159 Wn.2d 65, 76, 147 P.3d 991 (2006); *see also State v. Goss*, 186 Wn.2d 372, 383, 378 P.3d 154 (2016) ("'A court abuses its discretion only if no reasonable person would take the view adopted by the trial court.'" (internal quotation marks omitted) (quoting *State v. Wooten*, 178 Wn.2d 890, 897, 312 P.3d 41 (2013))).

For the reasons discussed, I concur.

Madsen, J.

Goozen McCloud, J.

Wiggins, J.

8