FILED
10/24/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br>JOHN ALAN WHITAKER,<br><br>     Petitioner. | No. 82442-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

  HAZELRIGG, J. — After reversal on appeal and retrial in 2015, John A. Whitaker was again found guilty of aggravated murder in the first degree with a firearm enhancement, and conspiracy to commit murder in the first degree. Whitaker appealed to this court and argued numerous errors, including prosecutorial misconduct, impacted those proceedings. This court agreed that the State had committed misconduct which prejudiced Whitaker, but also determined that, had Whitaker's attorney objected at trial, the misconduct would have been curable by instruction. On that basis, we affirmed his convictions.

  The Washington State Supreme Court then accepted review of Whitaker's case on a limited issue from the retrial. After the Supreme Court issued its opinion,

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

Whitaker filed a personal restraint petition (PRP) in this court asserting ineffective assistance of counsel (IAC), based on the failure to object to the State's misconduct and other decisions by counsel, prejudiced him in his retrial. In light of our prior holding in the direct appeal to this court, we grant Whitaker's petition in part.

FACTS

In 2004, a jury found John Whitaker guilty of aggravated murder in the first degree and conspiracy to commit murder in the first degree based on his involvement in the death of Rachel Burkheimer in September, 2002. This court affirmed his convictions on direct appeal. See State v. Whitaker, 133 Wn. App. 199, 135 P.3d 923 (2006) (Whitaker I). However, the convictions were reversed in 2013 when this court granted Whitaker's PRP, because his right to a public trial was violated. In re Pers. Restraint of Whitaker, No. 61980-2-1, slip op. (Wash. Ct. App. June 17, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/619802.pdf. The State elected to retry Whitaker and, in 2015, he was again convicted of the same offenses. Those convictions were affirmed by this court on direct appeal. State v. Whitaker, 6 Wn. App. 2d 1, 429 P.3d 512 (2018) (Whitaker II).

The underlying facts and recent procedural history, as set out in his most recent appeal, are as follows:

> On remand in 2015, the State charged Whitaker with the same offenses. As in Whitaker's first trial, the State presented evidence that Whitaker helped his friend John Anderson and several others kidnap and kill Burkheimer, who was Anderson's ex-girlfriend. Whitaker helped to bind, hide, and transport Burkheimer. He helped

to dig her grave, rob her, bury her, and destroy evidence of her murder. Although Whitaker testified in his first trial, he did not testify on retrial. With the exception of Whitaker's testimony, the evidence presented by the State in the first trial was similar to that presented on retrial and is not repeated here.

The jury found Whitaker guilty of premeditated first degree murder, with an aggravating factor of kidnapping and a firearm enhancement, and conspiracy to commit first degree murder. During the trial, Whitaker moved for a mistrial several times, alleging prosecutorial misconduct, a violation of CrR 6.15, and a violation of his right to a unanimous jury. After trial, Whitaker moved for a new trial based on these issues and other newly identified issues. The trial court denied his motion and sentenced him to life without the possibility of parole on the first degree murder charge (plus 60 months for the firearm enhancement) and 240 months on the conspiracy charge.

Id. at 10–11.

In Whitaker's second appeal to this court, we held the prosecutor had engaged in misconduct on multiple grounds causing prejudice to Whitaker, but that each instance would have been curable with instruction, had defense counsel objected. Id. at 16–24. This court also determined that there was improper testimony regarding Whitaker's post-arrest silence, but that such error was harmless. Id. at 40–41. All other issues Whitaker raised in that appeal were not deemed error.

The Supreme Court then granted discretionary review as to a single issue, and issued an opinion clarifying that a duress instruction is not available for kidnapping when the allegation of kidnapping is presented solely as the underlying felony for a charge of aggravated murder. State v. Whitaker, 195 Wn.2d 333, 459 P.3d 1074 (2020) (Whitaker III). Following the Supreme Court opinion, Whitaker filed this PRP.

ANALYSIS

I.      Scope of this Personal Restraint Petition

"Both constitutional and nonconstitutional errors may be raised in a collateral challenge." In re Pers. Restraint of Elmore, 162 Wn.2d 236, 251, 172 P.3d 335 (2007).  The petitioner bears the burden of establishing actual prejudice as to a constitutional error; for a nonconstitutional error, the petitioner "must show a fundamental defect resulting in a complete miscarriage of justice." Id.  Whitaker's claimed errors are constitutional in nature: the right to effective counsel, and prohibition against cruel and unusual punishment.  U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, § 14.

"Collateral attack by personal restraint petition of a criminal conviction and sentence cannot simply be a reiteration of issues finally resolved at trial and upon appellate review." In re Pers. Restraint of Becker, 143 Wn.2d 491, 496, 20 P.3d 409 (2001).  The petition "must raise new points of fact and law that were not or could not have been raised in the principal action." Id.  "In order to renew an issue rejected on its merits on appeal, the petitioner must show the ends of justice would be served by reexamining the issue." In re Pers. Restraint of Gentry, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999).

Whitaker's case presents us with a highly unusual posture as we previously concluded on direct appeal that the State's actions at his retrial not only constituted misconduct, but were "clearly improper and prejudicial." Whitaker II, 6 Wn. App. 2d at 20.  We further held that the various instances of misconduct by the State could have been cured by instruction from the court had trial counsel objected.  Id.

at 23–24. Accordingly, Whitaker has made a showing that the ends of justice necessarily require an examination of the question of whether his trial attorney was ineffective.

II.     Ineffective Assistance of Counsel Based on Failure to Object

Whitaker advances a number of grounds upon which he anchors his overarching claim that his trial counsel was ineffective. We grant relief based on one in particular and decline to do so on the others.

A. Standard of Review

"The right to effective assistance of counsel is a foundational part of the compact between each of us and our state." In re Pers. Restraint of Garcia-Mendoza, 196 Wn.2d 836, 840, 479 P.3d 674 (2021). In order to prevail on a claim of IAC, Whitaker must establish both that his attorney's performance was deficient and that such performance prejudiced him. State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995). In a review of an attorney's performance, there is a strong presumption that counsel was effective. State v. Crow, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019). Performance is deficient if counsel's conduct falls "'below an objective standard of reasonableness.'" State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice exists if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. 2052.

An attorney was deficient if "there is no conceivable legitimate tactic explaining counsel's performance." State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Further, the question is not focused on "'whether counsel's choices were strategic, but whether they were reasonable.'" Grier, 171 Wn.2d at 34 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). A claim of ineffective assistance of counsel is reviewed de novo. In re Pers. Restraint of Burlingame, 3 Wn. App. 2d 600, 608, 416 P.3d 1269 (2018). If a personal restraint petitioner makes a successful IAC claim, they have necessarily met their burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846–47, 280 P.3d 1102 (2012).

B. Failure to Object to Improper Statements by Prosecutor that Duress is not a Defense

Whitaker claims his trial attorney was ineffective due to his failure to object when the State argued during closing that duress and fear were not defenses available under the law. This constitutes IAC as there was no reasonable strategic or tactical basis for the trial attorney to decline to object to a misstatement of the law that directly undercut the defense theory of the case. This is particularly true when the prosecution's improper argument was made in rebuttal closing and the

defense was without an opportunity to respond. The improper argument by the prosecutor was as follows:

> Thank you. Ladies and gentlemen of the jury, you have heard remarks from Counsel and argument on the fact that John Whitaker and all these individuals were just afraid that night. They were just afraid. They did all they did just because they were afraid. They were scared that John Anderson would have done something to them.
>
> Being afraid is not a defense to the crime of murder in the state of Washington. You can check that packet of instructions you have from top to bottom. You won't see it there. Because in the state of Washington duress is not a defense to murder. If it was, Judge Krese, wearing the black robe, she's been doing this for years, she would have given you that instruction. It is not a defense. And rightfully so. Because why should one person place the value of a life more value than the life of another person? It's not a defense.
>
> I told you the evidence doesn't suggest that Whitaker was afraid. Clearly not. Because he calls back to the house, and is pissed, and he tells him, tells Anderson, you come clean up your mess. That's not someone who's afraid. And when John Anderson tells him to go strike Rachel, and he doesn't do that, he doesn't get shot or anything. He tells him, I'm not doing it. That's not someone who is afraid. The evidence doesn't support fear.
>
> Maurice Rivas, he was someone who had disregarded [Anderson]. Everything that you hear about John Anderson being this individual who was volatile, extremely violent, crazy, he didn't just become this on September 23rd; he was always this way. But then who was his roommate? Who was his friend? Who was the person that you heard testimony, if you saw him, you saw John Anderson? It was Whitaker. So there's no fear, because even if there was, it's not a defense to the crime of murder in the state of Washington.

Whitaker II, 6 Wn. App. 2d at 22 (emphasis omitted). As a preliminary matter, after concluding that this argument by the State was both misconduct and prejudicial to Whitaker, we held that it was also curable by instruction, had defense objected. Id. at 23. We further determined that the issue was waived for purposes of the direct appeal based on that failure to object. Id. This establishes two layers of prejudice: first, Whitaker was without the benefit of a curative instruction which may

have impacted the outcome of trial and, second, Whitaker was deprived of relief on appeal because of waiver.

In addition to our express holding on misconduct and prejudice in the direct appeal, Whitaker has further established prejudice stemming from his attorney's deficient performance based on the fact that the jury presented a question during deliberation regarding duress. Again, the State's improper duress argument in rebuttal closing directly challenged Whitaker's defense to the conspiracy charge contained in Count II; that Whitaker was so fearful of Anderson he could not form the requisite legal intent necessary to engage in a conspiracy to commit murder. This defense is distinct from a true claim of duress, but the State's misconduct in this regard was two-fold: it conflated and mischaracterized Whitaker's defense as one of duress, while also declaring that such a defense was not legally available. The question from the jury seeking clarification of the law of duress demonstrates that its deliberations followed the inaccurate and improper arguments made by the State in this regard. As such, there is no reasonable strategic justification for Whitaker's trial counsel to have let the prosecution's assertion that duress was not a proper legal defense to Count II go unchallenged.

Further, it is significant that this court has already determined that the improper argument by the State was prejudicial. It appears that Whitaker's claim was unsuccessful on direct appeal only due to the heightened standard of review, which was triggered by the failure to object, that the reviewing panel applied in considering the claims of prosecutorial misconduct. The mistake by Whitaker's attorney in failing to guard against the State's improper argument is inextricably

linked to the resulting prejudice this court found in Whitaker II. In reaching that conclusion, we explained:

> Here, as in Davenport, the prosecutor's comment that duress is not a defense to murder was improper and prejudicial for several reasons. First, the prosecutor knew that the trial court had already refused to instruct the jury on duress on the aggravating factors, as requested by Whitaker, and ignored that fact and chose to bring up the legal theory anyway. Second, in closing, defense counsel did not argue that Whitaker should be acquitted because he killed Burkheimer out of fear of Anderson, as the prosecutor implied. Rather, he argued that Whitaker did not form the intent necessary for the conspiracy charge because he was acting out of fear of Anderson, not as part of a plan. The prosecutor's mischaracterization of the defense argument at the beginning of his rebuttal argument gave it greater emphasis. Finally, it is clear from the record that the argument prejudiced Whitaker because, as in Davenport, the jury submitted the following question:
>
> > The prosecutor said that "being afraid or being under duress" is not a defense in the state of WA. We need clarification on if that is indeed the "Law" in WASH.

Id. at 32. The trial court responded to the jury question by simply stating, "Please refer to the instructions you have already received, in particular, Instruction No. 1." Id. (internal quotation marks omitted).

As noted in Whitaker II, our prejudice analysis in this context is reinforced by State v. Davenport, 100 Wn.2d 757, 675 P.2d 1213 (1984). In Davenport, our state Supreme Court found that a prosecutor engaged in misconduct when they argued accomplice liability without having charged or sought instruction on the theory. Id. at 759. The Court of Appeals held this was misconduct, but determined there was no resulting prejudice. However, the Supreme Court disagreed as to prejudice; partly because the argument in question was presented during the State's rebuttal closing and also because the jury later sent a question asking for

a definition of "accomplice." The Supreme Court determined this question was indicative of the jury's reliance on the prosecutor's improper comments. Id. at 764. Our reliance on Davenport in the direct appeal was based on strikingly similar issues and facts. Whitaker II, 6 Wn. App. 2d at 23.

Misconduct such as that which occurred here, a misstatement of the law, is a relatively common trial occurrence often cured by instruction. This fact only highlights the deficient performance by counsel here. Confidence in the trial outcome was directly undermined because the failure to object meant the trial court did not provide a curative instruction and, after inquiring about the prosecutor's statement about duress, the jurors were left only with their instruction packet as guidance (which did not contain any mention of duress). See Strickland, 466 U.S. at 669 (Defining reasonable probability, as to prejudice, as "a probability sufficient to undermine confidence in the outcome."). Whitaker did not argue duress as a defense, so the prejudice here was compounded. First, the State explicitly mischaracterized the defense theory, and then declared that the theory it imputed to Whitaker was not legally available. There is no objectively reasonable justification for Whitaker's counsel to allow the prosecutor's statement, which was directly aimed at undermining the defense theory, to go unchallenged. Second, the statement could be perceived by a layperson juror to be a simple comment clarifying the law before them. This misconduct by the State is exactly the sort of superficially sterile legal argument the trial court could have corrected by way of instruction, and it went to the very lynchpin of the defense case. Hesitation or reluctance by defense counsel in this context was not reasonable.

We decline to ignore our own analysis of this precise record and resulting precedent. Our conclusions on direct appeal support our current determination that this particular prosecutorial misconduct claim only failed due to the heightened standard of review which was applied in light of the failure to object by Whitaker's counsel. This is true because the comment by the State could have been stricken and corrected by the court at the outset of the State's rebuttal argument, which further demonstrates that the deficient performance by Whitaker's attorney did materially affect the outcome, both at trial and on appeal. Accordingly, Whitaker has met his burden as to this challenge in his PRP. However, because this issue goes only to his conviction for conspiracy to commit murder, we next consider the other grounds for ineffective assistance presented in his petition.

C. Failure to Object to Prosecutor's Invitation for the Jury to Speculate About Victim's Feelings

Whitaker next asserts his attorneys were ineffective for failing to object to another instance of prosecutorial misconduct during closing argument when the State urged the jury to imagine what the victim was feeling and thinking during the events at issue. However, this does not constitute error, as the decision by counsel can be understood as strategic, such that Whitaker has failed to establish deficient performance. We need not determine whether the prosecutor engaged in misconduct with these comments as this court has already reached that conclusion. Whitaker II, 6 Wn. App.2d at 16-20.

Despite our precedent in this case concluding the prosecutor engaged in misconduct here, our review indicates trial counsel may not have objected for a

few reasonable and strategic reasons. As a preliminary matter, the comments themselves did not contradict or challenge the theory of the defense: that Anderson caused Whitaker and others to engage in the acts because they were fearful of him and that Whitaker was not a major participant. More critically, an objection could have called more attention to the problematic argument by the State and may have been perceived in such a way as to alienate the jury. Though Whitaker argues defense counsel should have expected that this argument would be made, given a nearly identical closing argument by the State at the first trial, this assertion does not engage with the reasons that failure to object may have been strategic. Notably as well, Whitaker's defense attorneys were not the same as the first trial, though the deputy prosecuting attorneys for the State were the same. Because Whitaker has not demonstrated deficient performance, in light of a clear strategic justification for not objecting to the State's misconduct, his claim of ineffective assistance on this basis fails.

> D. Failure to Object to Testimony About Whitaker's Invocation of Miranda[1] Rights

Whitaker's claim that his attorneys were ineffective for failing to seek a more specific curative instruction following a successful objection to testimony regarding his invocation of the right to remain silent also fails as a strategic choice. The record as to this issue reflects the following testimony from Detective Pince during direct examination by the State:

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[Deputy Prosecutor]: Did John Whitaker waive those rights and speak with you that day?

[Pince]: No.

Q: So at some point in time did you have a conversation with him that day?

A: Brief one, yes.

Q: Did he tell you anything about –

Defense Counsel: Your honor, I would object to the question that was just posed, and ask the court to strike the answer.

[Deputy Prosecutor]: The Court may strike the response, I have no objection to that.

The Court: I will sustain the strike the response, and that means the jury is to disregard.

Following this exchange, Whitaker's attorney moved for a mistrial outside the presence of the jury. The court reserved ruling on the motion for mistrial until it was later considered anew following the conclusion of Pince's testimony. The Court then stated the following:

> THE COURT: I want to make something clear to the record. That [denial in response to the State's question about Whitaker's waiver] was not the answer that was stricken, because the objection was made after the next question. So I think from the jury's point of view, I don't know that that would be clear that that was the answer that was stricken, because after the answer there was then another question.
>
> So at some point in time did you have a conversation with him that day?
>
> A brief one, yes.
>
> Did he tell you anything about -- and then [Defense Counsel] makes an objection to the question that was just posted, and asks the Court to strike the answer. [The State] doesn't object, and I strike it and tell them to disregard it.
>
> But I'm not sure that they would take it as being to the waiver, because it's actually the next -- there's another question that's answered after that. And that's also my recollection, but I checked

- 13 -

the record, because that was my recollection, that there was at least one additional question answered.

The court tentatively ruled to deny the motion for mistrial, but indicated it would provide a final ruling "depending on what the jury verdict is." The court was concerned about giving a curative instruction, given the need to explain the subtlety of what had been stricken under the previous ruling and what it intended to strike with the later curative instruction. Doing so would have called more attention to the improper testimony, such that the additional instruction would have been counterproductive. Defense did not request another curative instruction following this later argument on the motion for mistrial.

Here, this court concluded that the testimony elicited from the officer was improper, but deemed the error harmless. Whitaker II, 6 Wn. App. 2d at 38-41. Considering this issue through the framework of IAC is even less fruitful for Whitaker because of the discussion contained in the trial record. The court explicitly discussed a curative instruction, first noting that it would be difficult to conceive of how such an instruction would be worded and then indicated a concern that the more specific instruction would only call further attention to the improper testimony. Whitaker's trial counsel instead opted to address his concerns through a motion for mistrial, which the State then opposed, though the court reserved its ruling on the motion.

Defense counsel's strategy to address the comment was to follow his contemporaneous objection with a motion for mistrial and later raise the issue again in the motion for new trial. This was a reasonable tactical decision given the facts of how this trial irregularity unfolded. By the time the court heard the more

extensive mistrial argument, following the conclusion of Pince's testimony regarding Whitaker's invocation, an instruction would have only reinforced and called attention to the error. Whitaker's counsel was not deficient in his performance as to this matter.

III.    Claims Not Raised in Direct Appeal

A.    IAC Raised for the First Time in the PRP

We decline to consider Whitaker's arguments relating to ineffective assistance based on his counsel not proposing a particular pattern jury instruction, as well as, a duress instruction for conspiracy, defense counsel's abandonment of a motion for mistrial to which the State later agreed, and his attorneys' decision to not argue for murder in the second degree as a lesser included offense. Generally, a petitioner may not "renew[] an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." In re Pers. Restraint of Davis, 152 Wn.2d 647, 670-72, 101 P.3d 1 (2004) (footnotes omitted). Each of these challenges could have been raised in Whitaker's earlier appeal. He offers no argument as to why they could not have been presented on direct appeal, or why we should consider them for the first time in this PRP.

B.    Cumulative Error

Whitaker also contends all counsel's combined errors constitute cumulative error. At oral argument, Whitaker suggested this court should consider all the

assignments of error related to IAC under a cumulative error analysis.[2]  "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair."  State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012).  Where individual errors are harmless, the cumulative impact of multiple errors may still support reversal.  State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).  This "does not apply where the errors are few and have little or no effect on the outcome of the trial."  Id. (holding that where the defendant failed to demonstrate how errors affected the outcome of the trial individually, or combined, there was no reversible error).  However, as stated above, several of the allegations of ineffective assistance of counsel are not properly considered by this court in the context of a PRP.  Those which are appropriate for review here reflect strategic decisions by counsel and therefore are not error.  We have determined counsel was ineffective in failing to object to prosecutorial misconduct with regard to the improper argument about duress.  This sole instance of IAC does not support the application of cumulative error review.

As an aside, Whitaker did not present adequate briefing for us to reach this issue.  Under RAP 10.3(6), an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."  Here, Whitaker provides no authority in support of the application of the cumulative error test to his various assertions

---

[2] Wash. Court of Appeals oral argument, *In re Pers. Restraint of John Allen Whitaker*, No. 82442-2-I (April 15, 2022), at 19 min., 40 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022041041/?eventID=2022041041.

of IAC – he does not cite the rule for cumulative error, much less discuss how this court might apply the test as an overlay to an ineffective assistance of counsel claim.

We grant the personal restraint petition in part.[3]

WE CONCUR:

_____

_____          _____

---

[3] Whitaker's final challenge relates to sentencing and the consideration of youthfulness. However, because we are granting relief as to the charge of conspiracy to commit murder in the first degree, we need not reach this issue. The State may elect to retry him on that count, seek resolution by plea agreement, or simply decline further prosecution. Under any of those options, Whitaker will necessarily face resentencing and may argue mitigating factors of youthfulness in the trial court if he so chooses.