# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 84986-7-I |
| v. | UNPUBLISHED OPINION |
| DERRICK STEPHEN FESINMEYER, | |
| Appellant. | |

DWYER, J. — Derrick Fesinmeyer appeals from the judgment and sentence entered on the jury's verdicts convicting him of one count of burglary in the first degree, one count of felony violation of a no-contact order, and one count of assault in the fourth degree. Fesinmeyer asserts that the trial court erred by denying his request to bifurcate the trial proceedings as to his prior convictions for violating a no-contact order and that he was denied the right to a fair trial due to prosecutorial misconduct during closing arguments. Finding no error as to those assertions, we affirm the judgment entered on the jury's verdicts.

Fesinmeyer also asserts that the sentencing court erred by imposing upon him a victim penalty assessment despite his indigency. The State concedes error in this regard. Accordingly, we affirm in part and reverse in part, remanding

this matter to the sentencing court to strike the victim penalty assessment from Fesinmeyer's sentence.

I

For at least one year prior to the events in question, Fesinmeyer and Bodil Omnell were in a romantic relationship with one another. They shared a residence in Marysville.

In early July 2018, the Marysville Municipal Court entered a no-contact order on Omnell's behalf, prohibiting Fesinmeyer from assaulting her, having contact with her, or coming within 1,000 feet of her residence. Inscribed at the bottom of the order was a proviso stating that the "parties may exchange text messages on topic of 1) choosing new residence, 2) moving out. No other discussion allowed."

One week later, a neighbor heard a female voice screaming for help from within the Marysville residence that Fesinmeyer and Omnell had previously shared. The neighbor dialed 911. Police officers were dispatched to the residence, including Officer David Adams, who interviewed and observed Omnell within the residence, observed Fesinmeyer walking away from the residence, and later interviewed Fesinmeyer. Officer Adams took several photographs of visible scratch marks and redness on Omnell's hand, arms, cheek, and chest.

The State, by third amended information, charged Fesinmeyer with burglary in the first degree, felony violation of a no-contact order, and assault in the fourth degree. The State's felony no-contact order violation charge was

predicated on Fesinmeyer's alleged assault of Omnell and, in the alternative, on his two prior convictions for violating a no-contact order.

Prior to trial, Fesinmeyer moved to bifurcate the portion of the State's case regarding his prior no-contact order violation convictions. Fesinmeyer requested that such evidence be presented to the jury only if the jury were to first find that each of the other essential elements of the felony no-contact order violation offense had been proved. The State objected, offering as an alternative that the court (1) provide a jury instruction indicating that, in order to convict Fesinmeyer of the charged no-contact order offense, the jury could rely on either the assault element or the prior convictions element and (2) provide the jury with a special verdict form on which the jury could specify its findings as to those alternatives. The court agreed with the State and denied Fesinmeyer's request.

On the day the trial was set to commence, before the jury was sworn in, the State sought permission to admit as exhibits redacted copies of certain Marysville Municipal Court docket entries delineating that, in April 2013, the municipal court had, on two separate occasions, entered both findings and judgments convicting Fesinmeyer of one count of violating a "no contact/protection order." These redacted docket entries did not provide additional information concerning the underlying facts of those violations or of the no-contact orders that Fesinmeyer had violated. The court granted the request.

A two-day jury trial later commenced. In its opening statement, the State told the jury that the evidence would demonstrate that Fesinmeyer entered Omnell's residence in Marysville, started a verbal argument with her, and then

3

struck her, leaving her bruised and scratched, before he exited the residence. The State indicated that its evidence would include the testimony of the neighbor who called 911, an audio recording of that 911 call, Officer Adams' testimony, the July 2018 no-contact order signed by Fesinmeyer and Omnell, and photographs of Omnell's injuries taken by Officer Adams. During Fesinmeyer's opening statement, his counsel told the jury that the evidence would reflect that the residence in question was, in actuality, Fesinmeyer's residence, that he entered that residence only to collect his belongings, that he did not expect Omnell to be there, and that, as he was trying to leave, Omnell aggressively confronted him, requiring Fesinmeyer to defend himself.

The State opened its case in chief by calling to testify the neighbor who had dialed 911. The neighbor testified that she lived in Marysville, across the street from a residence in which she had observed Fesinmeyer and Omnell living for over one year prior to the events in question. She testified that, on the date in question, she was awakened when her children alerted her to sounds coming from the residence in question and that she could hear a man and a woman screaming from within. She testified that she went outside to her driveway, heard Omnell screaming for help, and saw Omnell, who looked frantic, scared, and crying. She testified that she dialed 911 as soon as she heard the yelling and screaming. The State moved to publish an audio recording of her 911 call, which was then played for the jury.

The State next called Officer Adams to testify. He testified that he was dispatched to the Marysville residence in response to the 911 call and that he

4

observed Fesinmeyer walking away from the residence and entering a nearby vehicle. He testified that he observed Omnell within the residence, in what appeared to be a living room, and that she was "clearly in distress," "on the floor hyperventilating, crying, just right there on the floor." He testified that he observed that her shirt appeared ripped and that she had scratch marks and redness on her arms, one of her hands and cheeks, and her chest. He testified that he used a camera to take photographs of those injuries as part of his investigation. The State offered to admit several of the photographs as exhibits. The court granted the request.

Officer Adams testified that he had interviewed Fesinmeyer, that Fesinmeyer had told him that he had entered the residence to collect his belongings, that he did not know that Omnell would be there, and that, in responding to the officer's question about whether Omnell lived there, Fesinmeyer stated that she did. Officer Adams also testified that Fesinmeyer told him that he had pushed past Omnell on his way out of the residence, that he had not touched her, and, with regard to Omnell's marks and injuries, that Omnell must have inflicted them upon herself.

Officer Adams also testified that he did not recall observing that Fesinmeyer had any obvious injuries.

The State rested its case. Fesinmeyer did not call any witnesses. The court thereafter provided instructions to the jury as to each of the charged offenses.

5

During closing argument, the State argued, in pertinent part, that Fesinmeyer knew that Omnell lived at the Marysville residence, that he entered the residence and remained there with the intent to both violate the no-contact order and assault her, and that the circumstantial evidence in the case—Officer Adam's observations of Fesinmeyer's emotional state, his photographs of her injuries, the 911 call audio, and the neighbor's testimony—all supported that Fesinmeyer assaulted Omnell.

Fesinmeyer's counsel argued, in pertinent part, that the State failed to prove that Fesinmeyer intended to violate the no-contact order because he was merely collecting his belongings from his own residence and did not expect Omnell to be there. Fesinmeyer's counsel further argued that no direct evidence supported that Fesinmeyer caused the injuries in question and that, even if he did make physical contact with her, he had a right to stand his ground by pushing her away when she did not let him leave the residence. Fesinmeyer's counsel also argued that, although there was evidence that Omnell was upset, "the reality is we don't know why she was upset. You have an absolute void of information when it comes to what happened in that house."

In rebuttal, the prosecutor argued that the circumstantial evidence in question constituted good evidence in support of the State's case that Fesinmeyer had assaulted Omnell. The prosecutor then suggested that the jury "imagine how [the alleged victim] must have been feeling while she's being hit." Fesinmeyer's counsel objected. The court told the prosecutor to "[m]ove on, counsel." The prosecutor then proceeded to argue that the testimony regarding

Omnell's emotional state at the time was evidence in support of the proposition that Fesinmeyer had just assaulted her.

The jury, in addition to receiving verdict forms relating to each of the charged offenses, was provided with a special verdict form concerning the charged no-contact order violation offense, which asked the jurors if they were unanimous as to (1) whether Fesinmeyer committed an assault in violation of the no-contact order and (2) whether he had been twice convicted for violating a no-contact order. The jury returned verdicts convicting Fesinmeyer as charged, including a response of "yes" as to whether Fesinmeyer had assaulted Omnell in violation of a no-contact order and a response of "yes" as to whether Fesinmeyer had two prior convictions for violation of a court order.

Fesinmeyer now appeals.

II

Fesinmeyer asserts that the superior court abused its discretion by denying his request to bifurcate the trial because the evidence of his prior convictions for violating a no-contact order was unfairly prejudicial to his case. Because bifurcations are disfavored and not constitutionally required, because establishment of Fesinmeyer's prior convictions was an element of the felony no-contact order violation offense elected to be proved by the State, and because the record supports that the admission of such evidence at trial did not result in unfair prejudice to Fesinmeyer, his assertion fails.

A

We review a trial court's decision on bifurcation for an abuse of discretion. State v. Roswell, 165 Wn.2d 186, 192, 196 P.3d 705 (2008) (citing State v. Monschke, 133 Wn. App. 313, 335, 135 P.3d 966 (2006); State v. Jeppesen, 55 Wn. App. 231, 236, 776 P.2d 1372 (1989)). A trial court abuses its discretion only when its decision is manifestly unreasonable, is based on untenable grounds, or constitutes a ruling that no reasonable judge would make. Monschke, 133 Wn. App. at 335 (citing State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)); State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing State v. Nelson, 108 Wn.2d 491, 504-05, 740 P.2d 835 (1987)).

B

Bifurcated trials "'are not favored.'" Monschke, 133 Wn. App. at 335 (quoting State v. Kelley, 64 Wn. App. 755, 762, 828 P.2d 1106 (1992)). "[T]he trial court has broad discretion to control the order and manner of trial proceedings." Monschke, 133 Wn. App. at 334-35 (citing ER 611; State v. Johnson, 77 Wn.2d 423, 426, 462 P.2d 933 (1969)). As our Supreme Court has recognized,

> [w]e have specifically held that such bifurcation is constitutionally permissible but not required. State v. Mills, 154 Wn.2d 1, 10 n.6, 109 P.3d 415 (2005). And we certainly did not suggest that defendants have a right to waive their right to a trial by jury on certain elements so as to prevent the jury from hearing prejudicial evidence. Courts have long held that when a prior conviction is an element of the crime charged, it is not error to allow the jury to hear evidence on that issue. Pettus v. Cranor, 41 Wn.2d 567, 568, 250 P.2d 542 (1952) (citing State v. Tully, 198 Wash. 605, 89 P.2d 517 (1939)).

Roswell, 165 Wn.2d at 197.[1]

However, the court in Roswell cautioned that it may be highly prejudicial "if an element of the crime is a prior conviction of the very same type of crime," because "there is a particular danger that a jury may believe that the defendant has some propensity to commit that type of crime." 165 Wn.2d at 198. Nevertheless, the court explained, "[i]f a prior conviction is an element of the crime charged, evidence of its existence will never be irrelevant. One can always argue that evidence that tends to prove any element of a crime will have some prejudicial impact on the defendant." Roswell, 165 Wn.2d at 198. Furthermore, the court instructed, any unfair "prejudice created by evidence of the prior conviction may be countered with a limiting instruction from the trial court." Roswell, 165 Wn.2d at 198 (citing Spencer v. Texas, 385 U.S. 554, 561, 87 S. Ct. 648 17 L. Ed. 2d 606 (1967)). Accordingly, the court provided that, in considering a request to bifurcate, "trial courts may exercise their sound discretion to reduce unnecessary prejudice where practical." Roswell, 165 Wn.2d at 198.

Fesinmeyer contends that the trial court erred by denying his request to bifurcate the trial because the admission of his prior convictions for violating a no-contact order, offered to prove an element of the State's charged no-contact order violation offense, resulted in unfair prejudice to him. In addressing

---

[1] Indeed, the court continued, "[t]he United States Supreme Court in reviewing Texas' habitual offender statutes held that it was not unconstitutional to enact such statutes and to present evidence at trial that tends to prove the existence of a prior conviction." Roswell, 165 Wn.2d at 197-98 (citing Spencer v. Texas, 385 U.S. 554, 565-66, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967)).

9

Fesinmeyer's contention, our Supreme Court's decision in State v. Taylor, 193 Wn.2d 691, 444 P.3d 1194 (2019), is instructive.

In Taylor, the defendant was charged with a felony violation of a no-contact order and sought to stipulate to certain elements of the State's charged no-contact order violation offense, rather than have the no-contact order itself admitted into evidence.[2] 193 Wn.2d at 696. The trial court denied the defendant's request and admitted the no-contact order in question. Taylor, 193 Wn.2d at 696. On appeal, our Supreme Court addressed whether the trial court erred by denying Taylor's offer to so stipulate and whether the trial court's admission of such evidence unfairly prejudiced Taylor's case. In so doing, our Supreme Court considered whether it was appropriate to extend the ruling announced in Old Chief v. United States, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), concerning felony status stipulations, to the matter before it. Taylor, 193 Wn.2d at 696-99. Our Supreme Court noted that

> [i]n Old Chief, the defendant was charged with violating a federal statute that prohibited possession of a firearm by anyone with a prior felony conviction.[3] Id. at 174. Prior to trial, the defendant offered to stipulate that he had been convicted of a qualifying felony. Id. at 175. The defendant "argued that the offer to stipulate to the fact of the prior conviction rendered evidence of the name and nature of the offense inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value." Id. The prosecution refused to join in the stipulation, seeking to admit the order of judgment for the defendant's prior conviction into evidence. Id. at 177. The trial court admitted the order of judgment, and the jury returned a guilty verdict. Id.

---

[2] In Taylor, the State's charged felony no-contact order violation offense was predicated on Taylor's alleged assault of the victim therein. 193 Wn.2d at 694-95.

[3] Old Chief's prior felony conviction was for "assault causing serious bodily injury." Old Chief, 519 U.S. at 175.

The Supreme Court reversed the defendant's conviction, holding that a trial court abuses its discretion under Federal Rule of Evidence 403 when it rejects a defendant's offer to stipulate to the fact of a prior felony conviction to prove his or her felon status in a felon-in-possession prosecution. Id. at 174. Significantly, the Court was careful to limit its holding to "cases involving proof of felon status." Id. at 183 n.7. The Court reasoned that the trial court's decision to reject the defendant's offer to stipulate and admit the order of judgment amounted to an abuse of discretion because the danger of unfair prejudice substantially outweighed the order of judgment's probative value. Id. at 191.

The Court noted that the prosecution is generally entitled to prove its case by evidence of its own choice in order to present its case with full evidentiary force. Id. at 186-87. However, the Court determined that this general rule has "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." Id. at 190. The Court reasoned that the prosecution was required to prove only that the defendant's prior conviction fell within a broad category of qualifying felonies. Id. at 190-91. As a result, there was no appreciable difference in the evidentiary value of a stipulation to a qualifying felony and admission of the official record of that felony. Id. at 191. Moreover, the Court highlighted that "proof of the defendant's [felon] status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." Id.

Taylor, 193 Wn.2d at 697-99.

Our Supreme Court concluded that the rationale in Old Chief "is distinguishable from the admission of domestic violence no-contact orders." Taylor, 193 Wn.2d at 700. That was so, the court concluded, because "a no-contact order is closely related to a felony violation of a no-contact order charge, and the probative value of introducing that no-contact order into evidence is greater than the probative value of showing a general felony conviction in Old Chief." Taylor, 193 Wn.2d at 700-01. The court further concluded that, although the probative value of a State's offer to prove a felony conviction by evidence of a

11

judgment entry and that of a defendant's offer to stipulate to such a conviction is equivalent,

> the same cannot be said here. To prove Taylor's felony violation of a no-contact order charge, the State was required to prove that there was a no-contact order in place that applied to Taylor, as well as that he knew of the order, violated a provision of the order, and committed an assault. See RCW 26.50.110(1), (4). Taylor offered to stipulate that a no-contact order was in place and that he knew of the order, but his offered stipulation was insufficient in comparison to the no-contact order itself. By introducing the no-contact order, the State was able to show that a valid no-contact order was in place and the specific restrictions of the order Taylor violated. Excluding the no-contact order from evidence would allow Taylor to circumvent the full evidentiary force of the State's case. See Old Chief, 519 U.S. at 186-87 (stating that a "defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").

Taylor, 193 Wn.2d at 701-02. The court also noted that "a trial court may redact any portion of a no-contact order that poses a risk of unfair prejudice." Taylor, 193 Wn.2d at 702 (citing State v. Roberts, 142 Wn.2d 471, 492-94, 14 P.3d 713 (2000)).

Accordingly, the court concluded that

> Taylor's domestic violence no-contact order was admissible under ER 403 because the probative value of the no-contact order far outweighed any danger of unfair prejudice. The no-contact order had significant probative value as to Taylor's felony violation of a no-contact order charge. The no-contact order provided the specific restrictions imposed on Taylor, was closely related to the charged offense, and offered evidence of multiple elements of the offense. In addition, there was nothing particularly inflammatory or unfairly prejudicial about the no-contact order. The no-contact order did not describe the nature of Taylor's prior domestic violence offense and was not more likely to stimulate an emotional, rather than a rational, decision from the jury. As a result, admission of the domestic violence no-contact order did not create a risk of unfair prejudice to Taylor. Consequently, the State was not required to accept Taylor's offered stipulation, and the trial court's decision to

admit the no-contact order into evidence under ER 403 was based on tenable grounds.

Taylor, 193 Wn.2d at 702-03.

C

Here, the State charged Fesinmeyer with one count of felony violation of a no-contact order predicated on Fesinmeyer's alleged assault of Omnell or, alternatively, on his two prior convictions for violating a no-contact order. Accordingly, in order to prove all of the elements of the charged felony violation of a no-contact order offense, the State was required to prove either that Fesinmeyer had assaulted Omnell or that he had two prior convictions for violating a no-contact order.

Prior to trial, Fesinmeyer moved to bifurcate the proceedings as to the prior convictions element discussed above. He requested that such evidence be presented and argued to the jury—and for the jury to be instructed as to the State's purpose for offering such evidence—only if the jury were to first find that he had committed the other essential elements of that charged offense. Fesinmeyer argued that, if the jury became aware of his prior convictions for violating a no-contact order, it would necessarily create a risk of unfair prejudice to him because the jury would view him as a person with a propensity to violate no-contact orders.

The State objected to Fesinmeyer's bifurcation request and offered, as an alternative, that the court provide the jury with a limiting instruction and

13

corresponding special verdict form. The court agreed with the State and denied Fesinmeyer's motion.[4]

At trial, the court admitted into evidence copies of the Marysville Municipal Court's docket entries setting forth Fesinmeyer's two April 2013 convictions for violating a "no contact/protection order." The docket entries did not provide additional information concerning the underlying facts of those violations or of the no-contact orders that Fesinmeyer had violated.

After both parties rested their cases in chief, the trial court, as pertinent here, read the following instructions to the jury,

**INSTRUCTION NO. 14**

To convict the defendant of the crime of felony violation of a court order, as charged in count two, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 13th day of July, 2018, there existed a no-contact order applicable to the defendant;
(2) That the defendant knew of the existence of this order;
(3) That on or about said date, the defendant knowingly violated a provision of this order;
(4) (a) That the defendant's conduct was an assault; or
(b) That the defendant has twice been previously convicted for violating the provisions of a court order; and
(5) That the defendant's act occurred in the State of Washington.
If you find from the evidence that elements (1), (2), (3) and (5), and any of the alternative elements (4)(a) or (4)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (4)(a) or (4)(b) has

---

[4] The court ruled as follows:
All right. In review of this, I'm going to deny the motion for the bifurcation at this time. The -- all of the charges in this case stem from one particular instance. I don't think it is necessarily unduly prejudicial for the jury. I would accept the proposal for purposes of a special verdict form if the parties agree on that, which I think alleviates any potential for unfair prejudice in this matter. So I'm going to deny that motion.

14

been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

On the other hand, if after weighing all of the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

. . . .

**INSTRUCTION NO. 17**

Certain evidence has been admitted in this case for only a limited purpose. Exhibits 33 and 34 may be considered by you only for the purpose of determining whether the defendant has twice previously been convicted of violating the provisions of a court order. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

. . . .

**INSTRUCTION NO. 19**

Exhibits 29, 33, and 34 (Certified Copy of the No-Contact Order and Certified Copy of Docket Entries) have been redacted. You are not to concern yourself with any redactions that have been made nor should the fact that the exhibit has been redacted be a part of your discussion during deliberations in any way.

In closing argument, the State addressed the prior conviction evidence as

follows:

Now, the State also alleges that he had two prior convictions for -- for no -- for the no contact order violations. You'll receive in evidence certified copies of something that's called a docket entry, and in those certified copies of those dockets, you'll find that the defendant was found guilty twice in two different cases for those crimes. So that element is proven beyond a reasonable doubt.

The special verdict form provided to the jury reads as follows:

**SPECIAL VERDICT FORM C**

We, the jury, answer the question submitted by the court as follows:

QUESTION: Did the Defendant commit an assault in violation of the no-contact order as stated in jury instruction 14 in paragraph (4)(a)?

ANSWER: _____(write "yes" or "no" or "not unanimous")

15

QUESTION: Has the Defendant been twice convicted for violating the provisions of a court order as stated in jury instruction 14 in paragraph (4)(b)?

ANSWER: _____(write "yes" or "no" or "not unanimous")

The danger of unfair prejudice to Fesinmeyer in admitting evidence of his prior convictions for violating a no-contact order was properly accounted for by the trial court. As recognized in Taylor, in determining whether the resulting prejudice is unfair, the probative value of the evidence in question is an important consideration. 193 Wn.2d at 702-03 (citing ER 403). Here, evidence of Fesinmeyer's prior convictions had significant probative value. Unlike the more tangential relationship between Old Chief's prior felony assault conviction and his commission of the underlying unlawful possession of a firearm charge, evidence of Fesinmyer's prior convictions for violating a no-contact order was closely related to the State's charged no-contact order violation offense herein. See Old Chief, 519 U.S. at 174-75, 191. Furthermore, such prior conviction evidence was greatly probative because it offered direct proof of an element of one of the State's charged offenses. Taylor, 193 Wn.2d at 701; former RCW 26.50.110(5) (2022). Indeed, as discussed herein, the State was required to present proof of such prior convictions in order to prevail on one of its two alternative allegations of the charged no-contact order violation offense.

Furthermore, the admission of evidence of Fesinmeyer's prior convictions for violating a no-contact order was not unfairly prejudicial to him. As set forth above, although admission of certain evidence may prejudice a defendant, that does not indicate that the resulting prejudice is unfair. See Roswell, 165 Wn.2d

at 198. Indeed, it is clear that evidence of Fesinmeyer's prior no-contact order violation convictions, offered to prove an element of the State's charged no-contact order violation offense, was inherently prejudicial to him. However, given that our legislature has authorized the State to rely on the existence of such prior convictions—alongside the other necessary proof—in prosecuting a defendant for violating a no-contact order as a felony, rather than as a misdemeanor, we cannot say that the prejudice resulting from such proof is, by itself, unfair.[5] See RCW 7.105.450(5); former RCW 26.50.110(5); see also Spencer, 385 U.S. at 565-66.

Additionally, the record does not reflect that the State's presentation or argument regarding the evidence of Fesinmeyer's prior convictions was inflammatory or otherwise emotionally provocative. Indeed, the exhibits introduced by the State—the redacted municipal court docket entries indicating that Fesinmeyer had been convicted of two no-contact order violations and the date of such convictions—were tailored to the underlying prior convictions element and did not identify additional details concerning the underlying no-contact orders, including the manner in which Fesinmeyer violated those orders. See Taylor, 193 Wn.2d at 702 (citing Roberts, 142 Wn.2d at 492-94). In addition, during its closing argument, the State limited its discussion of such evidence to only a few unembellished statements as to where the jury would locate such

---

[5] Indeed, it follows that a "defendant may not stipulate or admit" or, as here, bifurcate "his way out of the full evidentiary force of the case as the Government chooses to present it." See Old Chief, 519 U.S. at 186-87.

17

evidence and that such evidence supported the State's allegation as to the charged prior convictions element in question.

Furthermore, the trial court's jury instructions and the special verdict jury form further mitigated the danger of unfair prejudice to Fesinmeyer. Roswell, 165 Wn.2d at 198 (citing Spencer, 385 U.S. at 561). The trial court instructed the jury that the evidence of Fesinmeyer's prior convictions was admitted for a limited purpose, that the evidence could only be considered for the purpose of the jury's consideration of the prior convictions element in question, and forbade the jurors from both considering such evidence for any other purpose and discussing such evidence in any other capacity during their deliberations. The court also provided the jury with a special to-convict instruction that corresponded with those instructions. Finally, the court also instructed the jury to disregard the existence of redactions presented in the docket entries. These precautionary measures— and the absence of an assertion by Fesinmeyer that the jury disregarded any of the instructions with which they were provided—further minimized the risk of unfair prejudice.

Given these circumstances, and given that we presume that the jury follows the court's instructions, State v. Johnson, 124 Wn.2d 57, 77, 873 P.2d 514 (1994), the record does not reflect that the admission of evidence of Fesinmeyer's prior convictions was unfairly prejudicial to him. Thus, the trial court did not abuse its discretion either by denying his request to bifurcate the

proceedings or in the manner by which the court oversaw the jury's consideration of such evidence. Accordingly, the trial court did not err.[6]

III

Fesinmeyer next asserts that reversal of his convictions is required because the prosecutor engaged in prejudicial misconduct. This is so, Fesinmeyer contends, because the prosecutor improperly appealed to the jurors' emotions with regard to the alleged assault that was a predicate for several of the offenses for which he was convicted. Although the prosecutor's statement in question was indeed improper, the record does not reflect that such statement resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Accordingly, we disagree that appellate relief is required.

---

[6] Even if the trial court erred by admitting such evidence—which it did not—Fesinmeyer fails to show how any resulting error might have harmed him.

> "Evidentiary error is grounds for reversal only if it results in prejudice." State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). "An error is prejudicial if, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Neal, 144 Wn.2d at 611 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

In re Det. of Post, 145 Wn. App. 728, 748, 187 P.3d 803 (2008), aff'd, 170 Wn.2d 302, 241 P.3d 1234 (2010).

The record reflects that the evidence of Fesinmeyer's prior convictions was offered to prove one of two alternate elements in support of the State's charged felony no-contact order violation offense. The jury was instructed that, although they were required to be unanimous as to whether an alternative element was proved, they need not be unanimous as to which alternative element was proved. The jury's resulting special verdict reflected that the jury was unanimous as to the existence of each alternative element, finding beyond a reasonable doubt both that Fesinmeyer had two prior convictions for violating a no-contact order and that he had assaulted Omnell.

Given that, even if the trial court erred by admitting the evidence of his prior convictions, the record reflects that the jury nonetheless would have convicted him of the charged felony no-contact order violation offense in reliance on their unanimous finding that he had assaulted Omnell. Fesinmeyer does not present citations to the record, argument, or analysis in support of an assertion that there was a reasonable probability that the jury's verdict as to the assault charge would have changed if evidence of his prior convictions had not been admitted. Thus, Fesinmeyer's contentions are unavailing.

A

"The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012) (citing Estelle v. Williams, 425 U .S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); State v. Finch, 137 Wn.2d 792, 843, 975 P.2d 967 (1999)). "Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." Glasmann, 175 Wn.2d at 703-04 (citing State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984)).

"In order to establish prosecutorial misconduct, a defendant must show 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)).

B

Fesinmeyer asserts that the prosecutor uttered a statement during rebuttal closing argument that was improper and prejudicial. This is so, he asserts, because the prosecutor asking the jury to imagine how the victim was feeling at the time of the alleged assault constituted an invitation to the jury to decide the case not on an evidentiary basis but, rather, on an emotional one. In that regard, we agree.

In delivering closing argument, a prosecutor "has wide latitude to argue reasonable inferences from *the evidence.*" State v. Thorgerson, 172 Wn.2d 438,

20

448, 258 P.3d 43 (2011) (emphasis added) (citing State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991)). However, it is a prosecutor's duty to seek a verdict based on reason. State v. Echevarria, 71 Wn. App. 595, 598, 860 P.2d 420 (1993). "A prosecutor may not properly invite the jury to decide any case based on emotional appeals." In re Det. of Gaff, 90 Wn. App. 834, 841, 954 P.2d 943 (1998).

Here, during rebuttal closing argument, the prosecutor sought to respond to defense counsel's argument that there was an absence of evidence connecting Omnell's emotional state with Fesinmeyer's alleged assault and, in so doing, stated the following:

> [PROSECUTOR] Clearly [the alleged victim] wasn't just struck. There had to have been a struggle of some kind by Mr. Fesinmeyer tearing her clothing. That's good circumstantial evidence that he was beating her not just in the face, not just in the chest, not just in the arms, but he's trying to get at her body as well. She's got marks all over, and he has no injuries. You heard that from Officer Adams. He had nothing. That's not pushing someone out of the way. That's committing an assault.
> *I just want you to imagine how [the alleged victim] must have been feeling while she's being hit.*
> [DEFENSE COUNSEL]: And objection. That's clearly impermissible.
> THE COURT: Move on, counsel.
> [PROSECUTOR]: You know how she was feeling, because she was crying. She was on the floor, and she was hyperventilating. You know how she was feeling, because she was just assaulted.
> Now I want to talk about Mr. Fesinmeyer's statements. . . .

(Emphasis added.)

The prosecutor's suggestion to the jurors that they should imagine how the victim must have been feeling while she was being hit was improper. As an

initial matter, the State's appellate briefing concedes that "[h]ow a *juror* would feel in the victim's situation is irrelevant." Br. of Resp't at 29. Indeed, such a statement asking the jury to "imagine" a circumstance cannot be said to be an inference reasonably drawn from the evidence. Rather, such a statement improperly asks the jury to speculate on matters outside of the evidence presented at trial.

Furthermore, such a statement cannot be understood as an appeal to the jury's reasoned intellectual application of the law to the facts but, rather, such a statement constituted an improper appeal to the jury's emotions. See, e.g., State v. Craven, 15 Wn. App. 2d 380, 389, 475 P.3d 1038 (2020) ("It was improper for the prosecutor to insist a juror should 'feel right' and have a decision 'make sense' in the heart and in the gut when reaching a verdict."); State v. Whitaker, 6 Wn. App. 2d 1, 16, 429 P.3d 512 (2018) (concluding that the prosecutor's asking the jury multiple times to imagine what the victim was thinking and feeling in the hours leading up to her death constituted improper appeal to jury's emotions), aff'd, 195 Wn.2d 333, 459 P.3d 1074 (2020); State v. Pierce, 169 Wn. App. 533, 552, 280 P.3d 1158 (2012) (holding that prosecutor's statements were improper because "[t]hat the [victims] would never have expected the crime to occur was not relevant to [the defendant's] guilt, nor were the prosecutor's assertions about the [victims'] future plans"). Thus, the prosecutor's statement suggesting to the jurors that they should imagine how the victim felt as she was being assaulted was improper.

22

C

Fesinmeyer next asserts that the prosecutor's improper statement prejudiced him. This is so, Fesinmeyer contends, because that comment related to the State's allegation that he had assaulted Omnell, and the State's assault allegation underlay several of the offenses for which he was convicted. Because the context of the entire trial does not indicate a substantial likelihood that the single improper statement by the prosecutor affected the jury's verdicts, Fesinmeyer's assertion fails.

Once a defendant establishes that a prosecutor's statement is improper, we must determine whether the defendant was prejudiced by such misconduct. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). As applicable here, to obtain appellate relief, when the defendant objected at trial, the defendant must demonstrate that "the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760 (citing State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009)).

When reviewing an assertion that prosecutorial misconduct requires reversal, we review the statements in the context of the entire case. Thorgerson, 172 Wn.2d at 443 (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). "The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?" Slattery v. City of Seattle, 169 Wash. 144, 148, 13 P.2d 464 (1932).

Here, as detailed above, the State presented to the jury the testimony of Officer Adams and the neighbor who dialed 911, along with both the audio recording of the 911 call and the photographs that Officer Adams took of Omnell's injuries shortly after he arrived at the residence in question. Prior to closing arguments, an instruction that the court provided to the jury read, in pertinent part, as follows:

**INSTRUCTION NO. 1**

It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. . . .
. . . .
The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.
You may have heard objections made by the lawyers during trial. Each party has the right to object to questions asked by another lawyer, and may have a duty to do so. These objections should not influence you. Do not make any assumptions or draw any conclusions based on a lawyer's objections.
Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.
. . . .
. . . You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.

As set forth above, during rebuttal closing argument, the prosecutor improperly stated that "I just want you to imagine how [the alleged victim] must have been feeling while she's being hit." In response, defense counsel objected, the court told the prosecutor to "[m]ove on," and the prosecutor immediately proceeded to discuss how circumstantial evidence in the case regarding Omnell's emotional state supported the assault allegation and then proceeded to address certain statements that Fesinmeyer made to Officer Adams.

The context of the entire case does not establish a substantial likelihood that the prosecutor's improper statement affected the jury's verdict. Ample evidence was adduced at trial as proof of Fesinmeyer's alleged assault that the jury could have otherwise relied on for their verdicts, including the neighbor's testimony regarding Omnell's screams for help and her emotional state, the 911 call, the police officer's testimony regarding Omnell's emotional state, her visible injuries, the absence of visible injuries on Fesinmeyer, and the near-contemporaneous photographs of Omnell's injuries.

Furthermore, the trial court instructed the jury to consider only the evidence presented at trial, to disregard any statement by the court or the lawyers that is not supported by the evidence or the law, and, notably, to decide the case not on emotions but, rather, on their rational thought process. Again, absent indications to the contrary, we presume that the jury followed the court's instructions. Johnson, 124 Wn.2d at 77.

As to the improper statement itself, the statement in question was brief. It was not used as a central theme in closing argument. Rather, it was a single

25

sentence in rebuttal and, after the court indicated to the prosecutor to "[m]ove on," the prosecutor did so, immediately focusing on what the jury knew of the assault from the circumstantial evidence of Omnell's emotional state.

Furthermore, the trial court's utterance to the prosecutor to "[m]ove on" did not prejudice Fesinmeyer. Rather, the court's utterances in response to defense counsel's other objections during the State's closing argument suggest that the court's fourth such utterance constituted mild disapproval of the prosecutor's statement.[7] For instance, Fesinmeyer's counsel objected on four occasions during the State's closing argument and rebuttal argument. After three of these objections, the court instructed the State to "continue your argument," but in response to the objection in question, the court instructed the prosecutor to "[m]ove on." The court's use of the phrase "move on" rather than the word "continue" suggests a heightened level of chastisement short of sustaining the objection. Nevertheless, the trial court's phrasing suggests that the court was either issuing a neutral statement to the prosecutor to keep moving through his argument or uttering its disapproval short of sustaining the objection, thereby warning the prosecutor against continuing along such a line of argument. Given that the prosecutor immediately moved on from that statement and given that the court's other statements to the prosecutor in response to defense counsel's three other objections were even more neutral, the record suggests that the court

---

[7] The court's utterance of "move on" does not appear to have constituted either an express ruling on defense counsel's objection or an instance of the court's response adding legitimacy to the prosecutor's argument. Cf. Davenport, 100 Wn.2d 757.

26

intended its admonition to be perceived in the latter manner and that this was understood by counsel.

We also note that defense counsel did not request that a curative instruction be given to the jury in response to the prosecutor's argument and the court's direction. Although not dispositive, this also tends to suggest that the improper remark, in the context of the whole trial, did not appear to defense counsel at the time to be so prejudicial as to warrant further admonition to the jury.[8]

Accordingly, there does not appear to be a substantial likelihood that the single improper statement by the prosecutor affected the jury's verdict. Thus, the prosecutor's statement did not deny Fesinmeyer a fair trial. Hence, we find no impropriety warranting reversal.

IV

Fesinmeyer has submitted a pro se statement of additional grounds pursuant to RAP 10.10. None of these grounds for additional review entitle him to appellate relief.

Fesinmeyer first asserts that the trial court abused its discretion by issuing a ruling in response to Fesinmeyer's CrR 3.5 motion without holding an additional hearing on that motion. Fesinmeyer's assertion fails. The court issued a written ruling determining that, based on the undisputed testimony received at the first hearing, it had sufficient evidence to issue a ruling on Fesinmeyer's motion. The

---

[8] Indeed, in two earlier instances at trial, defense counsel had, immediately after the court had sustained her objections, requested a curative instruction from the court.

27

court denied Fesinmeyer's motion, holding that his statements made to certain police officers during the events in question were admissible. Fesinmeyer does not challenge the trial court's determination that additional evidence was not necessary to issue a ruling on his CrR 3.5 motion. Fesinmeyer's statement of additional grounds also does not (even informally) assign specific error to any portion of the court's ruling. We will not consider a defendant's statement of additional grounds for review if it does not inform us of the nature and occurrence of alleged errors. RAP 10.10(c).

Fesinmeyer next asserts that the trial court abused its discretion by denying his request for a continuance in order to reappoint counsel. Fesinmeyer's assertion fails. Fesinmeyer elected to proceed pro se more than three years earlier, in 2019, after a thorough colloquy with the superior court concerning the risks associated with proceeding pro se, and he was provided with stand-by counsel. His October 2022 request for a continuance was made on the Friday before trial in his case was set to commence on the following Monday. The trial court ensured that his long-appointed stand-by counsel would be available to provide him assistance and denied his request as untimely. The trial court did not abuse its discretion by so doing.[9]

_____

[9] The record reflects that, from the end of 2019 until the middle of October 2022—on the eve of trial—Fesinmeyer had stand-by counsel available to him after he had elected to proceed pro se. Furthermore, after the trial court denied his requests—on the eve of trial—for a trial continuance and to reappoint counsel, his stand-by counsel indicated that she would be available to continue in such a role during the upcoming trial. Three days later, on the day that trial was set to commence, Fesinmeyer renewed his request to reappoint counsel in reliance on a health condition that had previously not been disclosed to the court. The trial court granted his request, appointed his stand-by counsel as his defense counsel, and, after ensuring that such counsel had sufficient time to make her preparations, continued his trial start date to the end of the month. At the resulting trial, Fesinmeyer was diligently and competently represented by his defense counsel.

Fesinmeyer next contends that the State did not present sufficient evidence to support his felony violation of a no-contact order conviction because, according to Fesinmeyer, those prior convictions were predicated on defective no-contact orders. However, Fesinmeyer does not provide us with evidence in support of this argument. Again, we are not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review. RAP 10.10(c). Fesinmeyer's assertion fails.

Fesinmeyer next contends that the State did not present sufficient evidence to support his burglary conviction. Fesinmeyer's claim fails. As set forth above, the record contained ample circumstantial evidence that Fesinmeyer entered and remained in the residence where Omnell was residing and that he entered or remained therein with the intent to commit a crime against her. Accordingly, none of Fesinmeyer's additional grounds warrant appellate relief.[10]

V

Fesinmeyer next asserts that the sentencing court erred by imposing upon him a victim penalty assessment despite his indigency. The State concedes error in this regard. Because the sentencing court previously found the defendant indigent, we accept the State's concession. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing RCW 7.68.035(5)(b)). We remand this

---

[10] On March 29, 2024 and April 5, 2024, Fesinmeyer's counsel submitted to the court handwritten documents prepared by the defendant himself to supplement his statement of additional grounds.

To the extent that the documents assert facts not in the record, the assertions have been ignored by the court, as such assertions are improper on direct appeal.

To the extent that the assertions contain legal arguments, the assertions have been considered by the panel. None demonstrate an entitlement to appellate relief.

matter to the superior court to strike the victim penalty assessment from

Fesinmeyer's sentence.

Affirmed in part, reversed in part, and remanded.

_Dwyer, J._

WE CONCUR:

_Brenner, J_   _Hazelrigg, ACJ_